[Criminal No. 325.   Filed May 1, 1913.]

[131 Pac. 970.]

W. D. WEBB, Appellant, v. STATE OF ARIZONA, Respondent.

1. CRIMINAL LAW—APPEAL—ASSIGNMENTS OF ERROR—WAIVER.—Assignments of error which appellant does not argue in his brief will not be considered.

2. LARCENY — INDICTMENT — VARIANCE — OWNERSHIP OF PROPERTY.— Under an indictment charging larceny from a corporation, it was sufficient to prove that the owner was a corporation *de facto* doing business as such; and hence its articles of incorporation, although not in full compliance with the law, were admissible as tending to show its *de facto* existence.

3. LARCENY—EVIDENCE—OWNERSHIP OF PROPERTY.—On a trial for larceny from a corporation, its articles of incorporation and evidence that S. was its president and secretary were sufficient evidence of its existence as a corporation to justify the admission of evidence of its ownership of the stolen property.

4. LARCENY—EVIDENCE—OWNERSHIP OF PROPERTY.—On a trial for larceny of cattle, a bill of sale of the cattle was admissible to show

ownership in the party alleged in the indictment, although recorded in the office of the livestock sanitary board after the date of the offense was committed, notwithstanding Laws of 1905, chapter 51, section 63, providing that every person, firm, etc., owning range horses, cattle, etc., may adopt a brand and earmark; that the right to use for branding and marking range animals a brand adopted as therein provided and recorded as therein required shall be deemed the property of the person so designing, adopting, and recording the same, and may be sold and transferred; and that no sale, transfer or encumbrance of the right to use such brand shall be valid, unless evidenced by a written bill of sale recorded in the office of the secretary of the livestock sanitary board—the purpose of that section being to compel those transferring brands and marks to adopt a method of notifying others of the true ownership thereof, and the statute having no reference to the sale of animals.

5. LARCENY—EVIDENCE—OWNERSHIP OF PROPERTY.—Under Laws of 1905, chapter 51, providing that brand tax receipts shall be *prima facie* evidence that the owner of the brand has complied with provisions of that section for the year ending July 1st following, section 67, making it unlawful to use any brand upon which the tax has not been paid, and providing that livestock freshly branded with any such brand shall be subject to seizure and confiscation, and section 68, providing that the brand of the owner who has complied with the provisions of that act, borne by a range animal, shall be taken as *prima facie* evidence that the animal bearing it is the property of the owner of such brand, a brand tax receipt issued May 6th was admissible on a trial for a larceny committed prior to that date as *prima facie* evidence that the holder of the receipt was the owner of the brand set forth therein, and had complied with provisions of that act at all times prior to the 1st of July following, and with a bill of sale of such brand to such party was *prima facie* evidence that the animal bearing the brand was the property of such owner.

6. WITNESSES — IMPEACHMENT — LAYING FOUNDATION. — On a criminal trial the testimony of a witness, given on a preliminary examination, could not be contradicted and impeached without laying a foundation therefor.

APPEAL from a judgment of the Superior Court of the County of Yavapai. Frank O. Smith, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Reese M. Ling, for Appellant.

Mr. G. P. Bullard, Attorney General, Mr. Leslie C. Hardy, Assistant to the Attorney General, Mr. P. W. O'Sullivan,

County Attorney, Mr. Joseph H. Morgan, Assistant County Attorney, Mr. J. Ralph Tascher and Mr. E. S. Clark, for Respondent.

SHUTE, J.—The appellant, W. D. Webb, was indicted by the grand jury of Yavapai county on the third day of May, 1911, for the crime of grand larceny, committed on December 12, 1910, by stealing a neat animal, the property of the J. W. Sullivan Cattle, Land and Water Company, a corporation. He was tried and found guilty. Defendant appeals from the judgment of conviction and the order overruling his motion for a new trial.

He assigns as error, first, the admission of the articles of incorporation of the J. W. Sullivan Cattle, Land and Water Company; second, the admission of a bill of sale from J. W. Sullivan to the J. W. Sullivan Cattle, Land and Water Company; fourth, the admission of a brand tax receipt for the year ending June 30, 1912, over the objection of the defendant; fifth, the ruling of the court in refusing to permit witnesses to testify for the purpose of contradicting and impeaching the deposition of one William Dougherty; and 3, 6, 7, 8, and 9 are assignments of error which appellant concedes are determined by the disposition of the other assignments, and are not argued in the brief and will not be considered. *Bail* v. *Hartman,* 9 Ariz. 321, 83 Pac. 358; *Mayhew* v. *Brislin,* 13 Ariz. 109, 108 Pac. 253; *Southern Pac. Co.* v. *Richey,* 13 Ariz. 67, 108 Pac. 225.

The first assignment of error is the admission of the articles of incorporation of the J. W. Sullivan Cattle, Land and Water Company, a corporation, over the objection of appellant; he claiming that, inasmuch as the articles of incorporation did not contain the names of the incorporators, and the record revealing that the articles of incorporation complained of were couched in the ordinary language, that "we, the undersigned," etc., at the bottom of which were signed the names of those purporting to be the incorporators of the company.

It was proved by the evidence that the company known by the name given in the indictment was a corporation *de facto* and doing business as such. It is now generally conceded by the great weight of authority that it is sufficient to establish

that a corporation *de facto* exists to maintain an allegation
of ownership in a corporation in larceny cases; and to estab-
lish that fact the introduction of its proposed articles of
incorporation, whether in full compliance with the law of
incorporation or not, would be a step in proving its *de facto*
existence; hence the trial court did not err in admitting the
articles complained of. *People* v. *Hughes,* 29 Cal. 258; Jones
on Evidence, par. 55; *People* v. *Frank,* 28 Cal. 507; *People* v.
*Barric,* 49 Cal. 344; *Spring Valley W. W.* v. *San Francisco,*
22 Cal. 441. And the general rule is very well expressed in
3 Encyclopedia of Evidence, page 594, as follows: "Should
the prosecution for an offense committed on the property of
corporations prove that the corporation was a *de facto* cor-
poration, doing business as such under the corporate name
set out in the indictment, it is sufficient; it is not necessary
it should be proven to be a corporation *de jure.*"

The second assignment of error is the admission of the bill
of sale from J. W. Sullivan to the Sullivan Cattle, Land and
Water Company, over the objection of appellant, when the
J. W. Sullivan Cattle, Land and Water Company had not been
shown to be a corporation under the laws of this state; sec-
ondly, for the reason that the purported bill of sale was un-
doubtedly filed, and was recorded, in the office of the livestock
sanitary board of Arizona on the 5th day of May, 1911, which
was after the date of the alleged commission of the offense,
and could not be any evidence of the ownership prior to the
date of its filing in the office of the livestock sanitary board.

The first objection is disposed of by the fact that a certain
copy of the articles of incorporation of the J. W. Sullivan
Cattle, Land and Water Company is in evidence; and the rec-
ord further shows that J. W. Sullivan was president and secre-
tary of the corporation. We think that is sufficient. *People*
v. *Hughes,* 29 Cal. 258.

The second objection calls for a consideration of Act 51 of
the Laws of Arizona 1905, section 63, which is as follows:
"Every person, firm, association, or corporation owning range
horses, mules, asses, or neat cattle, sheep or goats in this
Territory, may design and adopt a brand and earmark with
which to brand and mark their animals. No two or more
brands of the same design or figure, and no two or more ear-
marks of the same kind, shall be adopted or recorded. The

right to use for branding and marking range animals a brand
or earmark designed and adopted as herein provided, and
which shall have been recorded as hereinafter in this Act
prescribed, shall be deemed to be the property of the person
so designing and adopting and recording the same, and such
right may be sold and transferred. No sale, transfer, or en-
cumbrance of the right to use such brand or mark shall be
valid, however, except it be evidenced by a written bill of sale,
duly signed and acknowledged, as deeds for the conveyance
of real estate are required to be acknowledged, and recorded
in the office of the secretary of the livestock sanitary board.''

This section is one adopted for the protection of those own-
ers of range horses, mules, asses or neat cattle, sheep or goats,
who may design and adopt a brand or earmark with which
to mark or brand their animals, and when adopted and re-
corded as provided by law shall be deemed the property of
him who so designs and records such brand or mark, which
right may be sold and transferred. The statute provides that
no such sale, transfer, or encumbrance ''of the right to use''
such brand or mark shall be valid, unless it be evidenced by
written bill of sale properly signed, acknowledged, and re-
corded in the office of the secretary of the livestock sanitary
board. There is nothing in this section that by direct applica-
tion would prevent one from selling animals which probably
had upon them brands that were not recorded and could not
have been recorded; for it must be conceded there are to-day,
and always will be, thousands of such animals upon the range,
to say nothing of other possessions under the same conditions,
that should be entitled to protection. This whole statute is
one for the benefit and protection of the livestock industry,
and fixes the place for the recording of brands and marks in
the livestock sanitary board, and the above section is only for
the purpose of compelling those transferring brands and
marks, when so transferred, to adopt a method of notifying
others of the true ownership of such brand and mark. Other
similar statutes have been construed by this court in *Brill* v.
*Christy,* 7 Ariz. 217, 63 Pac. 757, and *Epperson* v. *Crozier,*
10 Ariz. 30, 85 Pac. 482. In the latter case it was held, where
a bill of sale complying with the provisions of section 27, Act
6, Session Laws of 1897, is made sufficient evidence of the sale,
and that the penalty of being *prima facie* a thief is attached

to the one holding the animals under bill of sale not complying with the act, such bill of sale is admissible as evidence of a sale. Not only from a reading of this statute, but from the construction placed upon similar statutes by this same court, it seems to us clear that the statute under consideration had no reference to the sale of animals, and was admissible as evidence of ownership.

The fourth assignment of error challenges the authority of the trial court to receive in evidence, over the objection of the defendant, a brand tax receipt issued May 6, 1911. The appellant very strenuously contends that because the offense was charged and proved to have been committed in December, 1910, that the brand tax receipt should not have been received in evidence; for, having been issued at a time subsequent to the proving of the commission of the offense, that about all that would be proved was that at the time of the commission of the offense the owner thereof had transferred all right and title to the use of the brand by virtue of section 22 of Act 26, Session Laws of 1903. This point is not well taken, as the act above cited was superseded by chapter 51 of the Laws of 1905; the subdivision directly affecting this matter being section 67, which provides that a noncompliance with the tax provided therein only works a confiscation of freshly branded animals under the law. The appellant, in support of his contention, cites several cases drawn from the Texas statute, which provides "that no brands, except such as are recorded by the officers named in this chapter, shall be recognized in law as any evidence of the ownership of the cattle, horses or mules upon which same may be used." Article 4930, Revised Civil Statutes of 1895. We have no such statute. On the contrary, our law provides: "Said receipt shall be *prima facie* evidence that the owner of said brand or earmark has complied with the provisions of this section of this act to the year ending on the first day of July next after the date of said receipt, and as well for all years preceding the date of said receipt." Laws 1905, c. 51, sec. 66. It would thus seem that the issuance of the receipt would be, by provision of law, *prima facie* evidence of a compliance with the brand law, not only up to the first day of July, but as well for all years preceding the date of the receipt. Therefore the issuance of the receipt, dated May 6, 1911, was *prima facie* evidence that the

J. W. Sullivan Cattle, Land and Water Company was the owner of the brand set forth in the receipt, and had complied with the provision of the act up to the first day of July, 1911, and was *prima facie* evidence of a full compliance of the law for all time prior to May 6, 1911. Section 68 of Act 51, Laws of 1905, provides: "The brand or earmark of the owner thereof, who has complied with the provisions of this act, borne by a range animal, shall in all courts in this territory be taken as *prima facie* evidence that the animal bearing the same is the property of the owner of such brand or mark." Therefore the bill of sale introduced, showing that J. W. Sullivan had transferred such brand to the J. W. Sullivan Cattle, Land and Water Company, taken together with the receipt, which shows a full compliance with all the laws applicable to the subject for the year ending June 30, 1912, became *prima facie* evidence that the animal bearing the brand was the property of the J. W. Sullivan Cattle, Land and Water Company. The trial court therefore did not err in admitting the said receipt in evidence.

The fifth assignment of error is the refusal of the trial court to permit the appellant to impeach the testimony of a witness, given at a preliminary examination, without having first laid the foundation therefor. There is some conflict in the decisions upon this question, but the great weight of authority is in favor of the ruling of the trial court. Wigmore on Evidence, par. 1032; 7 Encyclopedia of Evidence, 100; *People* v. *Compton,* 132 Cal. 484, 64 Pac. 849; *People* v. *Witty,* 138 Cal. 576, 72 Pac. 177; *People* v. *Pembroke,* 6 Cal. App. 588, 92 Pac. 668; *People* v. *Garnett,* 9 Cal. App. 194, 98 Pac. 247; *Baker* v. *Sands* (Tex. Civ. App.), 140 S. W. 521. In the latter case the authorities are quite fully collected and ably discussed.

This disposes of the entire assignments of error complained of by the appellant, and there appearing no error the judgment of the superior court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

N. B.—Judge ROSS being disqualified, and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the constitution, called in Hon. G. W.

SHUTE, Judge of the superior court of the state of Arizona, in and for the county of Gila, to sit with them in the hearing of this cause.

Application for rehearing denied.

NOTE.—As to the scope and effect of writs of error, see note in 91 Am. Dec. 193.

As to proof of ownership in prosecution for larceny, see note in 88 Am. St. Rep. 595.