STATE ex rel. BRYANT v. CARTER, Secretary of State.

No. 26541. Aug. 29, 1935.

William Cullen Bryant and Herschel V. Lewis, for plaintiff.

Mac. Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendant.

William M. Franklin and Harve L. Melton, amici curiae.

V. E. McInnis and Rainey, Flynn, Green & Anderson, brief amici curiae for respondent L. J. Sartain.

OSBORN, V. C. J. This is an application by the state of Oklahoma on relation of William Cullen Bryant, hereinafter referred to as petitioner, for a writ of mandamus to be directed to Frank C. Carter, as Secretary of State, hereinafter referred to as respondent, to require said respondent to proceed at once to hold a hearing on a protest filed in the office of the Secretary of State against Initiative Petition No. 142.

It is alleged that on April 23, 1935, there was filed with the Secretary of State a true and exact copy of a petition initiating a proposition to become an amendment to the Constitution of the state of Oklahoma, which was at that time designated State Question No. 205, Initiative Petition No. 142; that it is sought by said proposition to amend the Constitution to allow municipal corporations and other subdivisions of the government to acquire and operate public utilities and to require payment of all indebtedness so incurred from the revenues derived from the operation of such utilities, and to prohibit the levying of an ad valorem tax for such purpose. It is further alleged that on July 22, 1935, the original petition was filed with respondent containing the signatures of 109,385 voters, or 15,135 signatures more than the number required by law. On July 22, 1935, a notice of the filing of the original petition was published in the Tulsa World. On July 29, 1935, a protest was filed by one L. J. Sartain against the petition, alleging various irregularities in regard thereto. A hearing on the protest was set by respondent for September 3, 1935.

It is contended by petitioner that respondent is without authority to extend the time for hearing for 30 days; that he is without discretion in the matter and under the law is required to conduct said hearing immediately upon the filing of the protest. This contention is based upon section 5874, O. S. 1931, which provides in part as follows:

"When a citizen, or citizens, desire to circulate a petition initiating a proposition of any nature, whether to become a statute law or an amendment to the Constitution, or for the purpose of invoking a referendum upon legislative enactments, such citizen or citizens shall, when such petition is prepared, and before the same is circulated or signed by electors, file a true and exact copy of the same in the office of the Secretary of State, and within 90 days after the date of such filing, the original petition shall be filed in the office of the Secretary of State, and no petition not filed in accordance with this provision shall be considered. When such original petition is filed in said office it shall be the duty of the Secretary of State to forthwith cause to be published in at least one newspaper of general circulation within the state a notice setting forth the date of such filing. Any citizen of the state may, within ten days, by written notice to the Secretary of State and to the party or parties who filed such petition, protest against the same, at which time he will hear testimony and arguments for and against the sufficiency of such petition. A protest filed by any one hereunder may, if abandoned by the party filing same, be revived within five days by any other citizen. After such hearing the Secretary of State shall decide whether such petition be in form as required by the statutes, and his decision shall be subject to appeal to the Supreme Court of the state, and such court shall give such cause precedence over all others. * * *"

Petitioner relies upon the construction of the above statute in the case of Russell v. Harrison, 33 Okla. 225, 124 P. 762. In that case the facts were that on April 25, 1912, an initiative petition was filed. On May 4, 1912, a protest was filed and a hearing on the protest was set for June 17, 1912. A proceeding in mandamus was commenced in this court to require the Secretary of State to grant an immediate hearing. In discussing the same statute with which we are here concerned the court said:

"The last expression of the Legislature upon the subject was the act approved March 18, 1911, section 1, supra, of which amended section 2 of the act of March 17, 1910 by omitting the five days mentioned, and providing in effect that, at the time of the filing of the protest, the Secretary 'will hear testimony and arguments for and against the sufficiency of such petition.' The spirit of this legislation indicates the purpose to have immediate action in the premises by the Secretary. The word 'will,' as used in this connection, means 'shall,' and that part of the last section quoted is mandatory, and it is the duty of the Secretary to proceed to an immediate hearing of testimony and arguments for and against the sufficiency of the petition. The word 'shall,' being mandatory,

when addressed to a public official, excludes the idea of discretion. In re O'Rourke, 9 Misc. 564, 30 N. Y. S. 375. In contemplation of law, this hearing, when begun, is always open until finally concluded."

The rights of the parties are determinable from a construction of the above-quoted statute. It is conceded by all parties that the legislative purpose was to require speed and dispatch in the procedure to enable the people to exercise their reserved legislative powers. The section is amendatory of prior enactments passed by previous Legislatures, said prior enactments providing that upon the filing of a petition invoking the initiative or referendum, and after notice by publication and after protest filed to the sufficiency of said petition, the Secretary of State should set a date not less than 5 days from the filing of protest for the hearing of said protest and proceed to hear the same.

It is urged by petitioner herein that it was the duty of the Secretary of State immediately and instantly to proceed to hear the protest filed herein. It will be noted, however, that the protest was filed on July 29, and the protest period did not expire until August 4. Petitioner concedes, however, while relying upon a strict and literal interpretation of the language of the statute that "any citizen * * * may * * * protest against the same, at which time he shall hear testimony and arguments," leads to the position of requiring the Secretary of State instantly and forthwith to begin a hearing on the protest of one citizen, whereas many other protests may be filed before the expiration of the protest period. To obviate this anomalous situation, petitioner therefore concedes that the language used in the statute is capable of enlargement to mean that the hearing must begin instantly upon expiration of the protest period. Petitioner further concedes that the language is capable of further enlargement to include additional time, not exceeding four or five days, to enable the Secretary of State and the parties to appear and present testimony and arguments relating to the matter in controversy. But petitioner contends that the fixing of September 3rd as the date for hearing is unreasonable, arbitrary, and capricious, and transcends the authority of the Secretary of State.

This court wholeheartedly endorses, and by its previous actions has upheld, the spirit of the legislative intention to expedite the expression of the people at the polls with speed and celerity on matters relating to their reserved legislative powers. Delays through tedious judicial or other proceedings should be eliminated as far as possible. But in the exercise of the reserved powers by the people, the Legislature has seen fit to provide safeguards in favor of the citizens of the state against fraud, corruption, and chicanery. Any citizen has a right to protest the sufficiency and legality of an initiated petition, which, if adopted, will work a fundamental change in the established law. The safeguards to the citizen against such evils are as necessary as the protection of the rights of the citizens themselves to exercise said powers. A technical and literal construction of a procedural statute which would result in converting a hearing authorized by law into a simple farce would destroy the valuable reserved rights of the people. It is the duty of this court, therefore to ascertain and give effect to the legislative intent to make the safeguard provided by the Legislature a feasible and workable proceeding to effectuate the intent and purpose.

We can agree that the Legislature did not intend to vest in the Secretary of State a discretion, judicial or otherwise, in the fixing of a time to conduct said hearing. But we cannot agree that the Legislature intended any act on the part of the Secretary of State which would annihilate the safeguards intended to be erected by it for its citizens. The Legislature had in mind an orderly procedure without the lapse of unnecessary time, consistent with reasonable speed and reasonable action on behalf of the official charged with said responsibility and reasonable opportunity and action on the part of the moving parties. In using the above-quoted language "at which time," the Legislature used the same in the sense of "immediate," which has had much judicial construction by the courts. The Legislature did not intend the imposition of some unreasonable and impossible burden, as to point of time, on the Secretary of State. It had in mind the many duties which had theretofore been placed upon said official by law. It had in mind the limitations of human effort. It had in mind the orderly processes of hearings before other tribunals, and by the use of the above-quoted language, it intended to provide speed, diligence, and dispatch according to orderly procedure, under the circumstances necessarily contemplated by the procedure provided.

The voluminous petitions containing 109,000 names with pamphlets containing 20

names or less, each, with the signing citizens scattered throughout the entire state, would require a period of time even casually to inspect. Whether the names of said citizens appearing thereon were placed thereon by forgeries, whether citizens, either in their zeal or by their indifference, had signed their names several times, whether the circulators had properly verified said signatures as required by law, all of these matters, going to the sufficiency of the petition, required time to inspect, investigate, and determine.

In the case of State ex rel. Mitchell v. Meddler (N. M.) 131 P. 976, the Supreme Court of New Mexico had under consideration a statute providing for the removal of an official for misconduct in office. By the act it was provided that after the filing of the complaint and as soon as the case was at issue "it * * * must be **immediately** set down for trial and shall have precedence over all other cases on the docket." In discussing this point the court said:

"It is urged by relators that the district court lost jurisdiction of the subject-matter of the cause by failing to comply with section 12 of the act, hereinabove quoted. It is true that the section provides that the cause, as soon as at issue, must be immediately set down for trial, and shall have precedence over all other cases on the docket. This section was evidently intended, so far as the public is concerned, to afford speedy and efficient remedy to remove an unsatisfactory official. So far as the defendant is concerned, it was designed to secure to him a speedy trial. We cannot interpret the terms used in this section to be absolutely peremptory in effect. In adopting such a section, the Legislature necessarily took into account the usual course of proceedings in courts of justice. The Legislature knew that various considerations moved the court * * * to meet the exigencies then confronting it. All that the Legislature could have intended by the section was to impress upon the proceeding the greatest possible expedition, both for the benefit of the public and of the defendant. It might possibly be that, if a proceeding of this kind were allowed to be delayed an unreasonable time, the defendant might be entitled to a discharge; but the word 'immediately,' as used in the section, and as applied to the subject-matter regulated by the act, can certainly reasonably mean no more than that the proceeding shall have a preference, and shall be expedited as much as within the power of the court. See 4 Words and Phrases (First Series) 3403."

In the citation referred to in the above quotation from Words and Phrases, many judicial interpretations in harmony with the above language may be found. See, also, Ex parte Menner, 35 Okla. Cr. 252, 250 P. 541.

We are forced to the conclusion that it is the duty of the Secretary of State upon the filing of an initiative petition to proceed to hear any protest filed with dispatch and without unreasonable delay, taking into consideration the particular circumstances of each case. The law does not authorize undue delay, but contemplates the hearing and disposal of said protest with as much speed and celerity as the particular circumstances warrant. Said official is not authorized arbitrarily and capriciously and unreasonably to postpone said hearing. But, under the facts and circumstances disclosed by the allegations in this case, we cannot conclude that the action of the Secretary of State in setting said hearing for September 3rd is an unreasonable, arbitrary, and capricious act on his part.

The parties hereto, including William M. Franklin and Harve L. Melton as amici curiae, have urged this court to determine the extent and nature of the hearing before the Secretary of State. This question is not properly before us on an application for a writ of mandamus.

The application for writ of mandamus is hereby denied.

McNEILL, C. J., and BAYLESS, PHELPS, and GIBSON, JJ., concur. RILEY, J., dissents. BUSBY, WELCH, and CORN, JJ., absent.