406 P.2d 258

**KERLEY CHEMICAL CORPORATION OF ARIZONA, Appellant,**

v.

**PRODUCERS COTTON OIL COMPANY OF ARIZONA, an Arizona corporation, Appellee.**[*]

**No. 2 CA–CIV 83.**

Court of Appeals of Arizona.

Oct. 8, 1965.

———◆———

Jennings, Strouss, Salmon & Trask, by John S. Hobbs, Robert E. Hurley, Phoenix, for appellant.

Rawlins, Ellis, Burrus & Kiewit, by William D. Baker, Phoenix, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment rendered in a mortgage foreclosure action, in which it was determined that a mortgage held by the appellant, Kerley Chemical Corporation, upon certain farming land was subordinate to a realty mortgage upon the same land held by the appellee, Producers Cotton Oil Company.

The case was tried to a jury and the jury found, in answers to special interrogatories, that there was an oral agreement between Kerley Chemical and Producers Cotton to the effect that the Producers mortgage would have priority and this mortgage would be for the total amount then owing to Producers from the mortgagors as a carry-over from the 1959 farming operations together with the amount to be advanced for the 1960 crop. The total amount

---

[*] This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8175. The matter was referred to this court pursuant to A.R.S. § 12–120.23.

of this mortgage, which was foreclosed by the judgment of the lower court, was in the amount of $344,800.00, plus interest and attorney's fees.

Though Kerley Chemical filed an answer and counterclaim in the action which alleged that the Kerley mortgage in the sum of approximately $24,000.00 was entitled to a priority over the entire amount of the Producers mortgage, apparently at the time of trial it took the position that there was an oral agreement that its mortgage should be subordinate to a Producers mortgage, but that the amount of such mortgage as to which it was to be subordinate was not to exceed the amount owed by the mortgagors to Producers as a carry-over debt for the 1959 crop. In the statement of facts contained in the briefs, it is indicated that the amount of such prior mortgage was agreed not to be in excess of $50,000.00; in the answers to interrogatories submitted to the jury, one would gather that the amount of such alleged priority was to be limited to $25,000.00. The court is unable to ascertain the reason for this inconsistency in figures because no transcript of the testimony has been filed with this court in connection with the appeal.

The only assignment of error made on appeal is that the court erred in excluding the testimony of a witness produced by Kerley whose testimony was offered "for impeachment purposes" as to the testimony of one Isaac Haynes. The testimony of Haynes had been introduced in deposition form. This deposition has been filed by the court at the instance of the appellee, and from reading same it is apparent that Mr. Haynes gave some rather inconclusive testimony that Kerley understood the Producers mortgage was to have priority and that it was to be in an amount of $135.00 per acre upon 800 acres of land.

At the time of his deposition, the witness was asked whether he had ever talked to one *Buf*ford Luttrell about the sale of his farm in February of 1962. The witness stated he did not remember such a discussion and did not know Mr. Luttrell.

From a partial transcript of the evidence, which contains only a part of the testimony of the one witness, *Beu*ford Luttrell, it is disclosed that Mr. Luttrell was permitted to testify that he did talk to Isaac Haynes about the sale of his farm in February of 1962. An objection was made, however, to the witness giving the exact conversation, the objection being that it would be hearsay and no proper foundation had been laid for the impeachment of Mr. Haynes. These objections were sustained by the court.

What Mr. Luttrell's testimony would have been is not disclosed by the record, other than that his testimony would "show a different story" from Mr. Haynes' testimony in regard to the number of acres and the amount per acre to be included in the Producers mortgage.

■ The overwhelming weight of authority in this country is to the effect that before a witness may be impeached by a prior inconsistent statement, a foundation must be laid, calling the witness's attention to the allegedly prior inconsistent statement, so that the witness may have an opportunity to explain or deny the statement. Udall, Arizona Law of Evidence § 63, p. 87; 3 Wigmore on Evidence (3rd ed.) § 1025, p. 702; Jones on Evidence (5th ed.) § 933, pp. 1753–1757; McCormick on Evidence (1954) § 37, pp. 67–68; Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835 (1953).

■ While at first blush the rule may be regarded as hypertechnical, on reflection, one can appreciate its soundness. It must be remembered that the type of testimony under discussion is not substantive evidence going to the issues before the court. The testimony offered cannot be used for the purpose of establishing any facts in issue, but can be used only to judge the credibility of a witness. Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756, 757 (1955); Udall, Arizona Law of Evidence § 63, p. 92. The fear of persons to become "involved" in the conflicts of others is one of the ills which seems to be plaguing our society. A person's natural reluctance to testify will only be augmented if his credibility can be attacked

by his alleged inconsistent statements which he has not even been given the opportunity to refute or explain. And the explanation or the denial itself may very well assist the triers of fact in arriving at the truth.

Wigmore notes in his treatise that with few exceptions the courts have upheld the requirement, even though testimony is offered in the form of a deposition. 3 Wigmore on Evidence (3rd ed.) § 1031, p. 711 et seq. Wigmore notes there may be special reasons to permit such impeaching testimony, as, for instance, in the case when the party seeking to impeach did not have knowledge of the inconsistent statement when the deposition was taken. Because of the possibility of such reasons, Wigmore argues that the rule should not be "inflexible" and that the matter should be left in the sound discretion of the trial court. Professor·McCormick seems to agree. McCormick on Evidence § 37, pp. 68–69 (1954). Our Supreme Court has held that a foundation is required when it is sought to impeach the testimony of a witness given at a preliminary hearing. Webb v. State, 14 Ariz. 506, 131 P. 970 (1913).

All authorities agree that the requirement for foundation includes the giving to the witness the substance of the supposedly contradictory statement. Udall, Arizona Law of Evidence § 63, p. 87; 3 Wigmore on Evidence (3rd ed.) § 1025, p. 702. This requirement is of the very essence of the rule, inasmuch as it goes to the heart of the reason for the rule. In this case, Isaac Haynes was given no indication that he may have made any prior inconsistent statement in discussing the sale of his farm with Bufford or Beuford Luttrell. No contention is made by the appellants that at the time they took Mr. Haynes' deposition they did not have the information as to what Mr. Luttrell might say that Mr. Haynes had said about these mortgages.

■ Under these circumstances, this court can see no reason for making an exception to the general rule requiring the laying of a foundation for the impeachment of a witness by a prior inconsistent statement, and approves the ruling of the trial court in this respect.

■ In answering the question presented in the briefs, this court has gone further than was necessary to decide this appeal. It has done so because it is given to understand that this question arises from time to time in trial courts and has not been answered directly by our Supreme Court. In passing, however, this court must say that even if it had concluded there was error in the ruling of the trial court, it would not have been in a position to reverse the judgment rendered below. Without a transcript of the testimony, it is impossible for this court to know whether any error committed would have been prejudicial. This court is under a constitutional mandate not to reverse when "substantial justice has been done" in the lower court. Art. 6 § 27, Constitution of the State of Arizona, A.R.S. It will not be presumed that an error is prejudicial, but prejudice must appear from the record. State ex rel. Willey v. Whitman, 91 Ariz. 120, 370 P.2d 273 (1962). Moreover, when the nature of the testimony rejected by the trial court is as unclear as it is in this case, because of the failure to make an offer of proof, this court will not reverse. Musgrave v. Karis, 63 Ariz. 417, 163 P.2d 278 (1945); State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1962).

For the reasons stated the judgment of the trial court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.