495 P.2d 1352

Austin W. REYNOLDS, Appellant,

v.

UNITED PRODUCERS & CONSUMERS CO–OPERATIVE, Appellee.

No. 1 CA–CIV 1143.

Court of Appeals of Arizona,
Division 1.

April 24, 1972.

Rehearing Denied June 14, 1972.

Debus & Busby by A. Jerry Busby, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Robert A. Scheffing, Phoenix, for appellee.

HOWARD, Judge.

United Producers and Consumers Co-operative instituted this action to recover $1,590.35 for goods sold and delivered by them to Austin W. Reynolds on an open account. Reynolds counterclaimed for damages allegedly sustained as a result of the poor quality of these goods. Following

**146**

a trial to the court sitting without a jury a judgment was entered awarding United Producers and Consumers the sum prayed for, $1,590.35, and denying Reynolds' claim for damages. Reynolds appeals asking this court to reverse the judgment of the lower court with directions to enter judgment in his favor or, in the alternative, to grant a new trial.

Briefly, the facts leading up to the filing of this lawsuit are as follows. Reynolds, who is engaged in the raising and production of chickens and eggs for sale to the public, had purchased the feed for his chickens from United Producers and Consumers Co-operative, hereinafter referred to as United, for several years. On May 8, 1965, United delivered 17,460 pounds of laying mash to Reynolds to be used as feed for his poultry flock at Black Canyon, Arizona. The feed was a special mix laying mash which United had agreed to furnish in accordance with a formula and mixture furnished by Reynolds and agreed to by the parties. A few days after the delivery, many of Reynolds' chickens came down with diarrhea and egg production began to fall off. The diarrhea spread through the flock and many of the weakened chickens developed a respiratory ailment.

Reynolds, and others, testified that the feed delivered on May 8th had a peculiar smell, but that because feed delivered by United on a previous occasion had smelled the same way and had caused no ill effects, Reynolds went ahead and fed the mash to his chickens. During the several months after the May 8th delivery Reynolds suffered significant monetary losses due to chicken deaths and low egg production and therefore, being of the opinion that the sickness was caused by unwholesome feed delivered by United on that date, refused to pay for it. He also refused to pay for feed delivered on May 26th, even though he had no complaints with the quality thereof. When suit was brought on the open account by United, Reynolds counterclaimed for the damages allegedly suffered as a result of the sickness which he claimed was caused by unwholesome feed.

Appellant's first contention is that because United did not comply with A.R.S. §§ 24–912 and 24–914, requiring the manufacturer of commercial livestock feeds to inform the customer of the name and amount of each ingredient contained in a "customer-formula feed," he should not be required to pay for the feed.

■ Realizing, however, that violation of the "labeling" statutes alone will not preclude United from recovery, appellant's contention is, in reality, based upon his argument that "the evidence clearly shows" that "the composition or quality of the feed differed from what it was purported" to be. He argues that "it is uncontradicted from the testimony of several witnesses that the feed had an odd odor" and that "the feed differed from what it was represented to be in that the meat scraps used . . . came from Maricopa Tallow Company, rather than from Cudahy Meat Company, as specified by the appellant and agreed to by the parties."

A reading of the transcript reveals the following:[1] While Reynolds and others did testify that the feed had a peculiar odor the employees of United, who mixed and delivered the feed, testified that they noticed no such odor. Furthermore, Reynolds himself testified that on at least one previous occasion a load of feed had smelled the same way and when used caused no ill effects. In regard to the use of meat scraps, Reynolds testified that he had instructed United to use only meat scraps from Cudahy in the preparation of his feeds. United's employees, however, testified that, while there had been conver-

1. It should be noted that the determination of this appeal was made especially difficult by reason of the fact that, through the fault of neither party, a substantial amount of the transcript of the trial proceedings was not available and we were required to rely on a "Summary of Testimony" submitted by appellant as provided for under Ariz.R.Civ.P. 75(k), 16 A.R.S.

sations with Reynolds concerning meat scraps, he had never told them to use only Cudahy scraps in the preparation of his feeds. Furthermore, United's employees testified that they almost always used meat scraps from Maricopa Tallow, using those from Cudahy only when none were available from Maricopa, and also that there had been no complaints from other customers who had received feed containing meat scraps from the same batch used in Reynolds' feed.

As to the actual cause and nature of the disease affecting appellant's chickens, again there was conflicting testimony. Stated simply, appellant's experts testified that the cause was bad feed and appellee's expert testified that the chickens were suffering from diseases which were not passed through feed but rather through the air or from chicken to chicken.

█ It is clear from the above that there was evidence to support a finding that the feed delivered on May 8th was neither contaminated nor the cause of the disease which affected appellant's chickens. The trial court, sitting without a jury, is judge of the credibility of witnesses, the weight of the evidence, and the reasonable inferences to be drawn therefrom, Rogers v. Greer, 70 Ariz. 264, 219 P.2d 760 (1950), and where there is reasonable evidence to support the judgment of the trial court it will be upheld. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961).

Appellant secondly contends that the trial judge erred by not allowing him to testify as an expert witness in his own behalf and further erred by stating that he would not consider an admitted exhibit in making his decision in the case. We do not have the transcript of this portion of the trial before us but from the "Summary of Testimony" it appears that United objected to Reynolds being allowed to testify as an expert witness as to certain matters and the court ruled that, even though he qualified as an expert witness, he would

not be allowed to testify as an expert on his own behalf. Furthermore, when drawings of the Reynolds' poultry operation were admitted into evidence, over the objection of United, the court stated that the exhibit would not enter into its decision. No offer of proof was made as to Reynolds' testimony.[2]

██ It is, of course, the general rule that an offer of proof is essential to secure review of exclusion of evidence. Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158 (1948). Appellant, however, relies on the following language from Peterson v. Sundt, supra, to support his contention that no offer of proof was necessary:

"There are however certain well-recognized exceptions to this rule, as is succinctly stated in 4 C.J.S. Appeal and Error, § 291b(1), as follows: *'Exceptions and Limitations.* Notwithstanding the general rule above stated it is often held that an offer of evidence is not necessary to preserve an objection to a ruling of exclusion for review, where the purpose and purport of the testimony expected to be elicited is obvious, as when the question asked clearly indicates the pertinency, materiality, and nature of the answer expected, or the answer has been given and excluded, *or where the court has ruled broadly that no evidence is admissible in support of the theory or fact which the party is seeking to establish.'* (Emphasis supplied.)" 67 Ariz. at 318, 195 P.2d at 162.

We do not believe that either of the exceptions set forth above apply to the facts at hand. Clearly, the trial court did not prevent appellant from introducing any evidence to support a theory which he was seeking to establish, as was the case in *Peterson.* Furthermore, this is not an instance where "the purpose and purport of the testimony expected to be elicited is obvious, as when the question asked clearly indicates the pertinency, materiality, and nature of the answer expected. . . ."

2. It appears from the "Summary of Testimony" that the excluded testimony was offered in conjunction with the drawings of the poultry operation.

As the nature of the rejected evidence is at best unclear, appellant's failure to make an offer of proof precludes our review of the alleged error. Kerley Chemical Corp. v. Producers Cotton Oil Co., 2 Ariz.App. 56, 406 P.2d 258 (1965); Williams v. Long, 1 Ariz.App. 330, 402 P.2d 1006 (1965).

Appellant finally contends that it was error for the court to find that, because he had gone ahead and fed bad-smelling feed to his chickens, he was contributorily negligent and therefore could not recover on his counterclaim. There is nothing in the record to support this contention. The court's ruling in favor of United in its suit for the cost of the feed indicates that it merely found that the feed was not contaminated and therefore not the cause of appellant's injury.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.