[Roberts v. The State.]

# Roberts *v.* The State.

*Indictment for Rape.*

1. *Witness; when rule of exclusion applicable to expert witness.*
   Where, upon entering upon the trial of a case, the witnesses
   are put under the rule, an expert witness is within such rule
   during the examination of other witnesses on matters for
   which he is called.

2. *Rape; admissibility of evidence.*—On a trial under an indict-
   ment for rape, prosecutrix testified that the rape was com-
   mitted in a pasture about 45 yards from a large pine tree,
   and about 80 yards from a cornfield, and about 35 yards from
   a branch. A witness testified that three or four weeks after
   the alleged rape, in the pasture in question, he saw tracks of a
   man with shoes, and of bare feet, like those of a girl, leading
   into some bushes, where there were signs of a "scuffle," but
   that it was not near a large pine tree, and the place was about
   thirty steps from the cornfield, and about 15 yards from the
   branch. *Held:* that since the distances testified to by the two
   witnesses were merely their estimates or opinions, the identi-
   fication of the place was otherwise sufficient to render the
   evidence of the signs of the scuffle admissible.

3. *Same; unauthorized argument of counsel.*—On a trial under an
   indictment for rape, where the prosecutrix testified that the
   clothes worn by her at the time of the commission of the
   alleged offense showed indications of rough treatment, and
   other signs that would indicate the commission of the offense,
   it is not incumbent upon the State to introduce such clothing;
   and an argument of the attorney for the defendant, based on
   the failure to produce the clothing referred to by the prose-
   cutrix is properly arrested by the court.

4. *Same; same.*—In such a case, where the prosecutrix testified that
   some time prior to the alleged rape the accused had asked her
   to kiss him, and being refused, told her that, if she told her
   father, accused would kill both her and her father, and that
   she did not tell, it was not error to refuse to exclude an argu-
   ment by the State's solicitor that no one knew better than
   accused that she had not told; since it was but the expression
   of his opinion.

| | |
|---|---|
| 122 | 47 |
| 121 | 37 |
| 122 | 89 |
| †122 | 676 |
| 122 | 47 |
| 124 | 21 |
| 124 | 23 |
| 122 | 47 |
| 140 | 168 |

5. *Criminal law; reasonable doubt.*—A mere doubt, however honestly entertained by a jury, is not sufficient to authorize the acquittal of a defendant in a criminal case, but there must be a reasonable doubt; and a charge which instructs the jury that they must acquit the defendant, if after considering all the evidence they have a doubt as to his guilt, is incorrect and is properly refused.

6. *Rape; charge as to conflict in prosecutrix's testimony.*—On a trial under an indictment for rape, where it is shown that the prosecutrix on the preliminary trial of the defendant, placed the time of the alleged commission of the offense between 8 and 9 o'clock in the morning, and on the pending trial she testified that the time was between 7 and 8 o'clock, a charge which instructs the jury that this conflict in her testimony may be considered by the jury in determining what weight they will give to her testimony, asserts a correct proposition and should be given.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. J. W. FOSTER.

The appellant, Marion Roberts, was indicted, tried and convicted for forcibly ravishing one Annie Hattoway.

On the trial of the case, after the said Annie Hattoway had testified to the facts attending the commission of the offense, she further testified that the place where the defendant threw her down and ravished her was in a pasture near her father's house; that it was a smooth place in some bushes and was sandy, but the sand was not perfectly white; that it was about 45 feet from a large pine tree that had been killed by lightning, about 80 yards from a corn field in "the bottom adjoining the pasture," the bushes were thick there, and it was in the southeast corner of the pasture, about 35 yards from a branch, and from 30 to 50 yards from an oat field. The said Annie Hattoway further testified that at the time she was ravished by the defendant she had on an undergarment and a dress; and that during the afternoon of the day the offense was committed, she noticed that her undergarment had blood on it, both in front and behind. When asked about what time of the day she was assaulted by the defendant, she testified, that it was between 7 and 8

[Roberts v. The State.]

o'clock in the morning. During her cross-examination she stated that she testified on the preliminary trial and on the *habeas corpus* proceedings, that it was between 8 and 9 o'clock in the morning; but that she was now sure it was between 7 and 8 o'clock; that she had changed the designation of the time, because after the other trials she was informed that the time was an important matter in the case; and after thinking it over, she was sure it was between 7 and 8 o'clock.

Upon the cross-examination of one Ben Blackman, a witness for the defendant, he testified that about three or four weeks after the day the defendant was charged with having raped Annie Hattoway, he was passing through Mr. Hattoway's pasture, and made an examination to see if he could find the place of the alleged rape; that in one place in the pasture he saw tracks of a man with shoes and of bare feet like the tracks of a girl, that thereupon he followed these tracks in some bushes, where he saw signs as if there had been a struggle or "scuffle," but that he did not see near there a large pine tree, killed by lightning. On the re-direct examination of this witness by the defendant, he was asked, "How far is this place you refer to, from the corn field?" He answered that it was about thirty steps, and in answer to a question as to how far it was from the branch, he said it was about 15 yards. The defendant then moved the court to exclude the testimony of this witness as to any signs of a struggle or a "scuffle" at the place referred to by him in the pasture, on the ground that the place referred to by the witness is not sufficiently identified as being the place where the alleged rape was committed, as described by the witness Annie Hattoway. The court overruled this motion, and the defendant duly excepted.

During the re-examination of the witness Annie Hattoway, she testified that sometime before the defendant raped her, he came to the cow-pen one day while she was milking; and asked her to kiss him; that she refused, and the defendant told her that if she told her father, he, the defendant, would kill her and her father, both; and that she did not tell her father about the defendant asking her to kiss him, until the Sunday morning after the commission of the rape, which was on Thursday.

4

In the course of his argument to the jury, one of the defendant's attorneys said: "Annie Hattoway says her undergarment worn that 5th day of May [the day of the alleged rape] had blood on it, behind and in front. Where are those clothes, gentlemen of the jury? Why was not that garment here as evidence in this case?" The solicitor objected to these remarks by the defendant's counsel, and moved the court to exclude them from the jury, on the ground that they were illegal. The court sustained the objection, granted the motion, and excluded said remarks from the jury. To this action of the court, the defendant duly excepted.

In his closing argument to the jury, the solicitor used the following language: "The circumstances and testimony in the case show that no one knew better than Roberts, that she, Annie Hattoway, had not told her father, because they had been friends since Roberts asked her to kiss him, on up to the time of the alleged rape. Defendant knew he had this girl Annie Hattoway in his power. He had asked her two months before this, at the cow-pen to kiss him, and he told her there if she told her father he would kill her. She did not tell her father about defendant's talk at the cow pen. (And no one knew better than Marion Roberts, the defendant, that Annie Hattoway had not told her father about this kissing talk, at the cow pen.)" The defendant objected to that part of the solicitor's argument in parentheses, and moved the court to exclude it from the jury, on the ground that the same was illegal, since there was no evidence introduced to show whether the defendant knew that Annie Hattoway had or had not told her father about the incident referred to. The court overruled the objection and motion, and to this ruling the defendant duly excepted.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (9.) "If the jury, after considering all the evidence in the case, have a doubt as to the guilt of the defendant, they must acquit the defendant." (19.) "If a single juror has a doubt of the guilt of defendant, for which he can give a reason, there can be no conviction." (22.) "The

court charges the jury that if they believe from all the evidence in the case that Annie Hattoway delayed five days in making complaint to any one of the alleged rape on her, then they may, under the law, disbelieve her entire testimony." (24.) "The fact, if it be a fact, that the prosecutrix placed the time of the alleged commission of the offense between eight and nine o'clock in the morning on the preliminary trial of the case, and that she now changes the time to between seven and eight o'clock in the morning, may be considered by the jury in determining what weight they will give to her testimony."

S. M. DINKINS and L. D. GARDNER, for appellant.—Dr. W. B. Sanders should have been allowed to testify. He was offered strictly as an expert, and defendant's counsel so stated to the court at the time. Experts, called as such, are exempt from the rule of exclusion.—8 Encyc. of Plea. & Prac., 782; Greenleaf on Evidence, (15th ed.) § 432, note.

The testimony of the witness Blackman, which was objected to by the defendant, should have been excluded. There was not sufficient identification of the place referred to in his testimony and that referred to by the prosecutrix to authorize an admission of his testimony. *Barnes v. State*, 88 Ala. 204.

The rulings of the court upon the argument of counsel was erroneous.—2 Encyc. of Pl. & Prac. 714, 722; *Green v. State*, 97 Ala. 59; *Cross v. State*, 68 Ala. 476.

CHAS. G. BROWN, Attorney-General, for the State. The charges requested by the defendant and refused by the court should have been given.—11 Encyc. Plead. & Prac. 299, and note; *Smith v. State*, 92 Ala. 30; *Smith v. State*, 88 Ala. 73; *Harris v. State*, 96 Ala. 24. The testimony of the witness Blackman was properly admitted.—*Alsabrooks v. State*, 52 Ala. 124. The ruling of the court on comment of the counsel for defendant on failure of the State to have the garments worn by the prosecutrix in evidence, was free from error.—*Crawford v. State*, 112 Ala. 1; *Bates v. Morris*, 101 Ala. 282; *Jackson v. State*, 77 Ala. 18.

The statement made by the solicitor to the jury is so manifestly his opinion based on a legitimate argument of the facts that it is deemed unnecessary to discuss the point.—*Cunningham v. State,* 117 Ala. 59; *Pickens v. State,* 115 Ala. 42; *Rogers v. State,* 117 Ala. 192; *Sealy v. State,* 96 Ala. 69.

DOWDELL, J.—The defendant was tried and convicted on an indictment for forcibly ravishing one Annie Hattoway. Before entering upon the trial the witnesses were put under the rule, both State and defendant having invoked the same. W. B. Sanders, a physician, and a witness for the defendant, in violation of the rule of exclusion, remained in the court room during the trial, and heard a part of the testimony of one Dr. Pennington, who was examined as an expert on behalf of the State. On the objection of the State, the court refused to let the witness Dr. Sanders testify. It was stated at the time by the defendant that Dr. Sanders was only offered as an expert. Two other witnesses, physicians, were called and examined as experts by defendant in his behalf. It is contended by counsel for defendant that the court erred in not allowing the witness Sanders to testify, because, as it is urged, expert testimony does not fall within the rule of exclusion of witnesses. As to what witness or witnesses may be excluded from the rule when invoked is a matter resting in the sound discretion of the trial court; and its rulings in this respect are not subject to revision.—*Riley v. State,* 88 Ala. 193; *Berry v. State,* 88 Ala. 204; *State v. Brookshire,* 2 Ala. 303.

In the note to section 432 Greenleaf on Evidence (15th ed.) it is said: "To this rule, an exception is allowed in the case of medical witnesses; but even those, on matters of medical opinion, are examined apart from each other," citing Alison's Practice, pp. 542-5; Tait on Ev. 420.

It will be observed that under these authorities, the witness is not excepted from the rule of exclusion, during the examination of other witnesses on the matters for which he is called. Sanders was called as an expert, on the same matters other witnesses were called and examined. So it would seem that under the above

[Roberts v. The State.]

authority cited in appellant's brief, the witness falls within the rule and not the exception, according to the facts in this case.

There is no good reason why witnesses summoned to testify as experts, should be placed upon a higher plane than other witnesses, especially as to the matters they are called to testify about. The manifest purpose of the rule is to secure the truth and promote the ends of justice, to have the recollection of the individual witness, of the facts, which he may testify to, uninfluenced by the testimony of other witnesses, or in the case of experts, the opinion of the expert, uninfluenced by evidence of another expert. The discretion of the trial court in such cases, is a wise discretion, and always to be exercised for the promotion, and never at the expense of right and justice.

The distances testified to by the two witnesses Annie Hattoway and Blackman were merely estimates or opinions of the witnesses, and we think that the other matters of description taken in connection with the two sets of tracks as described by the latter witness, leading up to the place where he saw signs of a "scuffle" on the ground, sufficiently identified the place to render the testimony of this witness competent.

It was not incumbent on the State to produce at the trial the under-garment, on which, the witness Annie Hattoway stated was blood in front and behind, and the failure to do so could afford no presumption unfavorable to the prosecution under the facts in the case. The action of the court in arresting the argument of counsel on this line was without error.

What the solicitor said in the course of his argument as to no one knowing better than the defendant, that Annie Hattoway had not told her father about the kissing talk at the cow pen, was but the expression of opinion by the solicitor, and under the testimony of the case, we would not say it was a wholly unwarranted opinion. The court did not err in refusing to exclude these remarks of the solicitor.

A mere doubt however honestly entertained is not enough upon which to base an acquittal. Nor is a doubt

[Gafford v. The State.]

for which a reason may be given necessarily a reason-able doubt, although a reasonable doubt may be a doubt for which a reason can be assigned.—*Humbree v. State,* 81 Ala. 67. The written charges requested by the de-fendant and numbered 9 and 19 fall under the above propositions, and were properly refused.

Charge numbered 22 is conceded by counsel for appel-lant in their brief to be bad.

Charge 24 was not offensive to the rule against giving undue prominence to particular parts of the evidence, but comes within the exception to that rule as laid down in the cases of *Harris v. State,* 96 Ala. 24, and *Smith v. State,* 88 Ala. 73. It was error to refuse this charge.

For the errors pointed out the judgment of the circuit court is reversed and the cause remanded. The defend-ant will remain in custody until discharged by law.