15 So.2d 578

LOCAL 204 OF TEXTILE WORKERS UNION OF AMERICA et al. v. RICHARDSON.

7 Div. 713.

Supreme Court of Alabama.

Oct. 7, 1943.

Rehearing Denied Dec. 2, 1943.

38

Isadore Katz, of New York City, and Ling & Bains, of Bessemer, for appellants.

Horace C. Wilkinson, of Birmingham, and Chas. F. Douglass, of Anniston, for appellee.

BOULDIN, Justice.

■ If a motion for new trial has been duly filed, considered and overruled, the time limited for taking an appeal from the original judgment dates from the judgment overruling the motion for new trial; and this regardless of whether the fact of a motion for new trial and ruling thereon appear in the bill of exceptions so as to warrant a review of the ruling on the motion under Tit. 7, § 764 of the Code. Richards v. Williams, 231 Ala. 450, 165 So. 820; Emerson v. State, 241 Ala. 383, 4 So.2d 186.

What we have written sufficiently discloses the holding of the opinion in the Richards case, supra. As written, Head-

note 1 to that case is in conflict with Head-notes 2 and 3, which correctly state the holding of the decision.

In general terms, the nature of the case is outlined in brief for appellee as follows:

"Mrs. Madge Richardson, appellee here and plaintiff in the court below brought an action against Local 204 of the Textile Workers Union of America, an unincorporated association, Miss Virginia Brown-way, Miss C. Stricklin and Mrs. Lillie Bad-ing, now Mrs. Virginia Browning Hollo-gett to recover damages on account of the defendants wrongfully and maliciously causing plaintiff to be discharged.

"In general the plaintiff's claim was that she was employed by the Utica Knitting Mills in Anniston in August, 1939, and while working there the defendants wrong-fully and maliciously notified plaintiff's em-ployer that she was a member of said Local 204 and delinquent in the payment of dues to that organization. Plaintiff claimed that she was not a member of said organ-ization and not indebted to it in any sum. Plaintiff further claimed that the defend-ants wrongfully and maliciously caused her employer to require her to pay said dues or discharge her, and that she refused to pay said dues and that her employer dis-charged her because she did not pay the dues she did not owe."

The trial court gave the affirmative charge on behalf of Miss Stricklin and Mrs. Badgett, and the jury returned a verdict against the remaining defendants, Local 204 and Mrs. Virginia Browning Holloway, for $25,000.

The cause went to the jury on Counts 2 and 3 of the Complaint, as amended, and plea of the general issue. Among the assignments of error here insisted upon is the overruling of the defendants' demur-rer to Count 2. This Count, in pertinent part, reads: " * * * on, to wit: Au-gust 17, 1939, she (plaintiff) was, and had for a long time prior thereto, been in the employ of the Utica Knitting Company, a corporation, operating in Calhoun County, Alabama; that, on said date, the defend-ants, said Local 204, by its agents, and the others, acting for it at the time, and in the line and scope of their authority from it, wrongfully, also willfully or wantonly, caused her discharge from said employment on said date *in that,* through wrongful request of her employer, in substance that it require her, as a condition precedent to a continuation of her employment with it, to pay dues she did not owe to said Local 204, with proximate result that her employer did exact of her the payment of said dues, discharging her upon her re-fusal to pay them, * * *." (Italics supplied)

The 12th ground of demurrer thereto reads: "For that defendants are charged with wrongfully, also willfully or wanton-ly, causing the discharge of the plaintiff from her said employment, and the quo mode thereof, as is alleged, is not sufficient as a matter of law to constitute wrongful, also wilful or wanton, procurement of plaintiff's alleged discharge."

■■ Construing pleadings most strong-ly against the pleader when challenged by apt demurrer, this Count was subject to the demurrer under the well-defined rule that when a wilful or wanton wrong is charged in general terms, and this is followed by quo modo, the facts set up in the quo modo must support the allegation of wilful or wanton wrong.

■ The words "in that" clearly import that what follows is the quo modo.

■ That a *wrongful* request is not the equivalent in law to a *wanton* or *wilful* act is obvious.

The Count so recognizes in alleging de-fendants wrongfully *also* wilfully or wan-tonly caused plaintiff's discharge, etc. A request for discharge of plaintiff for non-payment of dues she did not owe would be wrongful, even though based on in-formation believed to be true under most, if not all, circumstances. The demurrer should have been sustained. Blackmon v. Central of Georgia Ry. Co., 185 Ala. 635, 64 So. 592; Jackson v. Vaughn, 204 Ala. 543, 86 So. 469; J. C. Byram & Co. v. Livingston, 225 Ala. 442, 143 So. 461; Wm. E. Harden, Inc., v. Harden, 29 Ala. App. 411, 197 So. 94.

■ Count 3 charged that defendants: "*Wrongfully and maliciously* caused the plaintiff to be discharged from her said employment by *wrongfully, maliciously* and *falsely* informing plaintiff's said employer that plaintiff was a member of Local 204 of the Textile Workers Union of America, which was false, and that she was delin-quent in payment of dues to that organiza-tion which was false; and by *wrongfully and maliciously demanding* of plaintiff's

employer that it require plaintiff to pay dues it was claimed she owed said Local 204 or be discharged * * *." (Emphasis supplied)

This Count is not subject to the same criticism as Count 2, nor to the objection that it alleges mere conclusions of the pleader. The complaint does not challenge the right of Local 204 to request or demand the discharge of employees, members of said Local who were delinquent in the payment of membership dues and refused to pay.

Count 3 bases the cause of action on wrongful, malicious and false representation touching plaintiff's membership in the Local, and a wrongful and malicious demand for her discharge upon her refusal to pay membership dues she did not owe, resulting in her discharge by her employer. The issue of malice, especially on the part of Miss Virginia Browning, the active officer of the union in presenting the evidence of membership and non-payment of dues upon which the employer acted, was a vital issue in the case presented by the pleadings and submitted to the jury by charge of the court. The verdict rendered was highly punitive, evidencing a finding of malice.

Evidence tended to show that plaintiff was reported to the employer as a member of the Local delinquent in the payment of membership dues; that the manager of the employer made this report known to plaintiff, who denied membership in the Local. This coming to Miss Browning, she presented to the manager a photostatic copy of a membership card, signed by plaintiff, reading:

"Textile Workers Organizing Committee of the Committee for Industrial Organization"
"Atlanta National Building, Atlanta, Georgia.
"June 16, 1938.
"I hereby accept membership in the Textile Workers Organizing Committee of the C. I. O., and of my own free will hereby authorize the Textile Workers Organizing Committee, its agents or representatives to act for me as a collective bargaining agency with the Utica Knitting Company, Anniston, Alabama, in all matters pertaining to rates of pay, wages, hours of employment or other conditions of employment, for a period of one year from above set out date. This authorization revokes any authorization I may have signed before this date.
"Signature Mrs. Madge Richardson
"Address 2004 Moore Avenue
"Witness:
"Ethel Hollingsworth
"Lucile McCrelles"

We note here that plaintiff, admitting the signature, denied any knowledge of its content, any assent to its terms, claimed it was procured by fraud and breach of confidence. Witnesses for defendant controverted these claims.

We are not here concerned with the weight of testimony on this or other issues of fact.

There is evidence that Miss Browning made no express request or demand for plaintiff's discharge upon her refusal to pay.

Section 7 of the contract between the employer and the bargaining agent (T.W.O.C. of the C.I.O.) entered into November 2, 1938, stipulated: "Section 7. The Corporation recognizes the obligations of the employees who are members, of the Union, to pay their Union dues and obligations."

Section 8 provided for arbitration of grievance in certain events.

Defendants offered in evidence arbitration proceedings had shortly before the events leading to plaintiff's discharge in the case of one Patterson, involving similar issues touching membership and obligation to pay dues. The finding of the arbitrators was this: "In line with all the facts presented and the direct evidence submitted, we unanimously find that Mr. O. B. Patterson was a member of T W U of A Local Union No. 204, that he was entitled to pay dues as did all other members of the Union, that he was a party to the contract signed with Local Union No. 204 on November 2, 1938 and was amenable to all of its provisions including his obligation, under the contract, to retain his membership during the life of the contract and that the Company is well within its rights, under the contract, to require him to live up to all of its provisions."

The court declined to admit this evidence. Was this error?

It is not a question of the binding effect of this award on plaintiff, nor whether the facts in the Patterson case were the same, nor even whether this class of disputes was within the arbitration clause.

In dealing with the question of a malicious purpose on the part of Miss Browning

to cause a discharge of plaintiff regardless of her delinquency in payment of membership dues, was this arbitration proceeding known to Miss Browning a precedent touching the procedure contemplated by her when she turned in the evidence of plaintiff's membership, a procedure to be instituted by the employer in case plaintiff still refused to pay? Evidence is relevant in law if logically relevant to the issues to be solved by the jury. We conclude, and hold, the arbitration award was admissible as a circumstance to be considered by the jury along with all the other evidence on the issue of malice vel non.

■ Charge 65, refused to defendants, reads: "If you are reasonably satisfied from the evidence that Mrs. Madge Richardson has made a contradictory statement about any material fact in this case, then you may consider such contradictory statement in determining what weight you will give the evidence of Mrs. Madge Richardson."

This charge is a duplicate of refused Charge 17 in Birmingham Ry., L. & P. Co. v. Glenn, 179 Ala. 263, 272, 60 So. 111, 114. Touching this Charge and Charge 15 in that case, the court declared:

"A long line of decisions in this state have recognized and applied the rule of trial practice that charges which single out, and thereby give undue prominence or emphasis to, particular parts of the evidence, are properly rejected by the trial court, although giving them is not erroneous. But it has also been frequently declared that charges such as these here exhibited belong to an exceptional class, and that refusal to so instruct the jury on request is such error as to require the reversal of the judgment. A review of these decisions is unnecessary, and would be unwarranted. They have marked the distinction stated, and defined the rights of parties with respect to such instructions, during a period of nearly 25 years, and their practical application is now well understood by the profession. Smith v. State, 88 Ala. 73, 77, 7 So. 52; Harris v. State, 96 Ala. 24, 28, 11 So. 255; Roberts v. State, 122 Ala. 47, 54, 25 So. 238; Hale v. State, 122 Ala. 85, 89, 26 So. 236; Hammond v. State, 147 Ala. 79, 89, 41 So. 761; Southern Cotton Oil Co. v. Walker, 164 Ala. 33, 53, 51 So. 169, 175; Griffin v. State, 165 Ala. 29, 46, 50 So. 962. See, also, Kress v. Lawrence, 158 Ala. 652, 47

So. 574; Birmingham Ry., L. & P. Co. v. Wiggins, 170 Ala. 540, 54 So. 189.

"The principle of these cases is that where particular evidence is offered for a particular and limited purpose, collateral to the main issue, as in the case of all impeaching or discrediting evidence, parties have a right to have its proper function and its limited operation presented to the jury by an appropriate instruction. An inspection of the testimony before the jury shows that neither of these charges was abstract, and we are therefore bound to hold that their refusal was reversible error."

See, also, Reynolds v. State, 196 Ala. 586, 72 So. 20; Birmingham Ry., L. & P. Co. v. Cochrum, 179 Ala. 372, 383, 60 So. 304; Louisville & N. R. R. Co. v. Cheatwood, 14 Ala.App. 175, 180, 68 So. 720.

■ Charge 17 in the Glenn case dealt with contradictory statements of the plaintiff in that case as Charge 65 deals with such statements by the plaintiff in this case. The charge was not abstract, but peculiarly apt and important in weighing the testimony of plaintiff in view of the entire record before us. It was not covered by other charges.

The principle that where one has wilfully sworn falsely to a material fact, his evidence may be wholly disregarded, is a distinct principle from that here considered.

■ Appellee makes the point that the record does not disclose whether all, or what particular defendant or defendants requested Charge 65, and insists its refusal cannot be invoked by these appellants. This contention is based on the heading under which refused charges are set out in the record, which reads: "Charges refused to defendant." A like heading, "Charges given for defendant," appears above the given charges, many of which disclose on their faces they are asked and given on behalf of all the defendants. On concluding his oral charge, the court said: "At the request of the plaintiff and the defendants I will read you some written charges which are to be taken in connection with my oral charge as a part of the law in the case. (Court reads charges.)"

Moreover, the refused charges, by their terms, disclose that some were requested on behalf of a particular defendant, and others in behalf of the defendants.

We consider Charge 65 in the latter class. It states the rule of law for weigh-

ing the testimony of plaintiff in considering whether she had made out a case, a right to recover at all.

For the errors pointed out, the appellants are entitled to a reversal. It is not necessary to decide whether a reversal should follow from the ruling on demurrer to Count 2 alone, considered in the light of the entire record.

We hold the evidence did present a case for submission to the jury.

We deem it unnecessary to consider and decide other questions raised by appellants.

Reversed and remanded.

All the Justices concur in the result.

GARDNER, C. J., and LIVINGSTON and STAKELY, JJ., concur in opinion.

THOMAS, BROWN, and FOSTER, JJ., do not concur in the holding touching the arbitration proceedings.

On Rehearing.

PER CURIAM.
Application overruled.

GARDNER, C. J., and THOMAS, BOULDIN, LIVINGSTON, and STAKELY, JJ., concur in the opinion.

BROWN and FOSTER, JJ., adhere to their original view that the arbitration proceedings were inadmissible.