286 P.2d 756

George WELCH, Jr., as Administrator of
the Estate of Delbert Clayton,
Deceased, Appellant

v.

Ira Jewell MEDLOCK and Magma Copper
Company, a Corporation, Appellees.

No. 5964.

Supreme Court of Arizona.

July 18, 1955.

Rawlins, Davis, Christy, Kleinman & Burrus, Phoenix, by George H. Rawlins and George Welch, Jr., Phoenix, for appellant.

Snell & Wilmer, by Mark Wilmer, Phoenix, and Tom Fulbright, Florence, for appellees.

UDALL, Justice.

This is an action brought by George Welch, Jr., as administrator of the estate of Delbert Clayton, deceased, as plaintiff (appellant), against Ira Jewell Medlock and the Magma Copper Company, a corporation, as defendants (appellees), to recover damages for the death of the deceased which plaintiff alleges was caused by the negligence of defendants in an automobile collision between a Dodge pickup operated by decedent and a Ford truck operated by the defendant Ira Jewell Medlock, as employee of the defendant Magma Copper Company. Defendants answered denying negligence and affirmatively alleged contributory negligence. The case was tried before the court with a jury, and resulted in a verdict for the defendants signed by nine jurors. The plaintiff made a motion for a new trial, which motion was denied. He prosecutes this appeal from the order denying said motion and from the judgment entered therein. Appellant will be designated as plaintiff, and appellees as defendants.

The complaint in the lower court was based on the alleged wrongful death of decedent. The facts, stated in a light most favorable to sustaining the verdict and judgment, are as follows:

On August 15, 1952, at approximately 10:30 a. m., decedent—accompanied by two friends, Lee Hicks and his son, Bynum Hicks—was driving a 1937 Dodge pickup truck south along U. S. Highway 80–89, approximately 3 miles south of Florence Junction. From that point south the highway was under construction for a distance of approximately 1 mile; circumventing this construction zone was a parallel detour road along the west side of the highway, having a graded dirt surface approximately 24 feet in width.

As the Dodge truck driven by decedent approached the detour, there were two heavy Ford flat-rack trucks, belonging to defendant Magma Copper Company, being

driven in a northerly direction along the detour and approaching its north terminus, where the detour curved upward in an easterly direction and entered the main highway, which is a two-lane paved thoroughfare.

The first of these two trucks entered the main highway and passed decedent's truck immediately before it entered the detour. The second truck was driven by defendant Medlock and was following approximately 150 to 200 feet behind the first truck through a dust cloud of some debatable magnitude and density, which had been stirred up by the first truck. Decedent's truck turned off the highway and had gone approximately 50 feet into the detour when it collided with the second truck driven by defendant Medlock, killing decedent.

The testimony of L. H. McMahan, Arizona Highway Patrolman, who investigated —but did not observe—the accident, indicated that the point of impact was 9 feet from the west side of the detour road. McMahan also testified that at this point there was a shoulder or strip of "very soft, loose sand," about 6 inches deep and from 4 to 5 feet in width, which extended along the east side of the detour and which was not "used by the cars." The flat-rack of the Ford truck driven by defendant Medlock was 7 feet 6 inches in width and extended outward beyond the cab about 18 inches. This overhanging bed of the truck collided with the left side of decedent's truck, shearing the left hand windshield post and ripping off the left door of the pickup.

There are four assignments of error, the first three upon the admission in evidence of a document entitled "Arizona Highway Patrol Fatality Sheet" (defendants' Exhibit A) and the fourth upon an instruction on contributory negligence requested by defendants and given by the court. We will consider these assignments as grouped, in their order.

The import of Patrolman McMahan's testimony given at the trial was to the effect that at the point of impact defendants' truck was over the theoretical center line (unmarked) of the detour road. On cross-examination he identified defendants' Exhibit A (the fatality sheet) as having been prepared, signed and delivered by him to the coroner at Superior. Counsel for defendants offered the exhibit in evidence for the avowed purpose of impeaching the testimony of McMahan. Over the strenuous objection of plaintiff the entire report was admitted in evidence and read to the jury. Included therein was the following paragraph written in McMahan's handwriting:

"Deceased (Driver of No. 1 Vehicle) came into Detour—Vision obscured by Heavy Dust hanging over detour— Vehicle No. 2 coming thru Dust Pall— No. 1 & No. 2 sideswiped—Left front corner of Truck Bed on No. 2 vehicle— struck & tore off entire left door and

side of No. 1 vehicle—*Possibility that No. 1 was just over c. l. of Detour*—Because of road condition of the time & place. Poor visibility—no citations issued." (Emphasis supplied.)

Confronted with the inconsistency between his testimony and the report, witness explained he had made a mistake in the report, that where it read "Possibility that No. 1 was just over c. l. of Detour" he intended to have stated it was the No. 2 car that was just over the center line.

Counsel for plaintiff requested that the court instruct the jury that the exhibit was being admitted solely for the purpose of impeachment and not to prove the truth of the statements therein made. The court denied counsel's motion—repeatedly made—for such an instruction regarding the exhibit, except finally the court did admonish the jurors that the last sentence, reading: "Because of road condition of the time & place, Poor visibility—no citations issued", should be disregarded by them.

The plaintiff by appropriate assignments of error and supporting propositions of law contends that the trial court committed prejudicial error: (1) in admitting Exhibit A (the fatality report) into evidence for the reason that it was incompetent on account of its hearsay characteristics, being based for the most part on speculation as to · what had happened; (2) that the prior contradictory statement of the patrolman contained therein, viz.: "Possibility that No. 1 (car) was just over c. l. of Detour"

was admissible only to impeach or discredit the witness and was not competent as substantive evidence of the facts to which such statement related; (3) that the jury must necessarily have been instructed —timely request having been made therefor —that such evidence was to be disregarded for all purposes other than that of impeachment; (4) that the unqualified admission of this Exhibit A into evidence was so highly prejudicial to plaintiff as to constitute reversible error.

As an abstract proposition of law, defendants do not seriously challenge the plaintiff's contention that ordinarily when a document is admitted *solely* for impeachment purposes the court should by an appropriate admonition tell the jury that it is being admitted for this limited purpose. Rather they seek to sustain the court's ruling admitting the exhibit in evidence upon the theory that it was admissible (1) either as a public record, under section 23–305, A.C.A.1939, or (2) as a "business record" under the provisions of Laws 1951, chapter 62, section 1 (now appearing as Sec. 23–314 (a, b), A.C.A.1939 Cum.Supp. of 1952). Finally they urge that if there was error in the admission of such exhibit it was either waived by plaintiff or at most was harmless error.

We hold there was no waiver and that, far from being harmless, the admission of the statement without limiting instruction was highly prejudicial to plaintiff's rights. From a careful study of the

authorities cited we are convinced that the exhibit in question is not a "public record" within the meaning of this term which we adopted in the case of Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893, 895, which reads:

"'A public record, strictly speaking, is one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference.'"

While by statute a patrolman is required to make a written report of an accident to the highway department under the provisions of Laws 1950, 1st S.S., chapter 3, section 45(c) (now appearing as Sec. 66-153r, par. (c), 1952 Cum.Supp.), such is not the report we are dealing with. However, because of our holding in State v. Hendricks, 66 Ariz. 235, 186 P.2d 943, that a patrolman is a peace officer, defendants place some reliance upon Laws 1952, chapter 27, section 2 (now appearing as Sec. 68–606(a), 1952 Cum.Supp., under the article having to do with Vital Statistics), which provides that where a person has knowledge of the death of a human being—with no physician in attendance—he shall forthwith report such fact to the nearest peace officer and

"* * * the peace officer receiving such report shall immediately make or cause to be made an investigation of the facts and circumstances surrounding the death and *report the results*

*thereof* to the coroner." (Emphasis supplied.)

Even assuming this section were applicable—which is most doubtful—it is to be noted that no formal written report is required. We hold Exhibit A is not a record made in pursuance of a statutory duty. See, Hadley v. Ross, 195 Okl. 89, 154 P.2d 939; State v. Martinez, 67 Ariz. 389, 393, 198 P.2d 115.

[2] Furthermore, we are of the opinion that this Exhibit A does not come within the purview of a "business record" defined in the recently adopted "Uniform Business Records as Evidence Act", supra, which was no doubt intended to liberalize and broaden the "shop book rule" and to enlarge the operation of the business records exception to the hearsay evidence rule. See, Haas v. Kasnot, 371 Pa. 580, 92 A.2d 171; Id., 377 Pa. 440, 105 A.2d 74. See, also, Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 153 A.L.R. 163, and 30 Texas Law Review 112 at 113. Hence the exhibit was inadmissible in evidence under either of the theories upon which counsel are now attempting to justify its admission.

It therefore seems apparent that the only justification for admitting Exhibit A in evidence was the impeaching statement contained therein, viz.: "Possibility that No. 1 was just over c. l. of Detour." As to this much at least the hearsay rule was inapplicable, since the statement was not offered to prove the truth of the words

therein. In the case of Young Chung v. State, 15 Ariz. 79, 136 P. 631, 637, we laid down this rule:

> "Contradictory statements made by a witness when not under oath become relevant and material only for the purposes of impeachment, unless the witness is a party and the statements are against interest. We know of no exception to the rule that would otherwise make them relevant."

To the same effect see Indian Fred v. State, 36 Ariz. 48, 282 P. 930; Otero v. Soto, 34 Ariz. 87, 267 P. 947.

In an excellent annotation appearing in 133 A.L.R. 1454, entitled "Extrajudicial statements by witness who is subject to cross-examination as evidence of facts to which they relate", there appears the following:

> "The general rule is almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness, and is not competent as substantive evidence of the facts to which such statements relate."

The question is then presented, how may such evidence be admitted and used for impeachment purposes without prejudice to the parties resulting from its being considered substantively? The 4th Circuit Court of Appeals in the case of Sprinkle v. Davis, 111 F.2d 925, 931, 128 A.L.R. 1101, supplies the answer:

> "In such a situation, the established rule is that the evidence should be accepted and the only question to be determined is what precaution should be taken to prevent, as far as possible, the misuse of the evidence. The instruction of the court, given either upon its own motion or at the request of the opposing party, suffices for this purpose."

The Supreme Court of Alabama in dealing with the problem summarized the law on this question as follows:

> " 'The principle of these cases is that where particular evidence is offered for a particular and limited purpose, collateral to the main issue, as in the case of all impeaching or discrediting evidence, parties have a right to have its proper function and its limited operation presented to the jury by an appropriate instruction. * * ' "

Local 204 of Textile Workers Union v. Richardson, 245 Ala. 37, 15 So.2d 578, 582.

See also State v. DeZeler, 230 Minn. 39,. 41 N.W.2d 313, 15 A.L.R.2d 1137; Inyo· Chemical Co. v. City of Los Angeles, 5· Cal.2d 525, 55 P.2d 850, 859; Gillaspy v. State, 96 Okl.Cr. 347, 255 P.2d 302. Cf.. State v. Voeckell, 69 Ariz. 145, 210 P.2d 972.

We believe that a reading of the transcript establishes beyond question that the plaintiff was seriously prejudiced by the admission of this exhibit into evidence without an admonition limiting its purpose to impeachment of the patrolman. The lengthy arguments in the presence of the jury relative to the admissibility of this exhibit and the court's rulings thereon resulted in unduly emphasizing in the minds of the jury statements contained in said exhibit. By its refusal properly to instruct the jury on this point the court in effect told the jury that all of the material contained in the exhibit (excepting only the last sentence thereof) was competent evidence to be given as much credence and probative value as any testimony taken under oath at the trial and it was their prerogative to determine which statement bore the true facts. We hold it was reversible error for the trial court to deny plaintiff's motion for an admonition or instruction limiting the purpose of this exhibit.

Inasmuch as the case must be reversed for a new trial we want to point out that, in our opinion, it also was error for the trial court—over plaintiff's timely objection—to have given defendants' requested instruction No. 13 on contributory negligence. Among other objectionable features it certainly cast an undue burden upon the plaintiff for the court to advise the jury that decedent owed a duty, under the circumstances, to drive in such a manner as "would enable him to stop his vehicle promptly to avoid a collision."

Judgment reversed with directions to grant a new trial.

LA PRADE, C. J., and PHELPS, WINDES and STRUCKMEYER, JJ., concur.