[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1145 
Joseph A. Eslava, Jr. was indicted and convicted for the murder of one-year-old Derrick Pender. He was sentenced to life imprisonment. Six issues are raised on appeal.
 I
The defendant argues that the trial court erred in admitting evidence of prior injuries sustained by Derrick Pender absent clear and convincing proof that they were inflicted by the defendant.
It is undisputed that on December 3, 1983, Derrick Pender died as a result of injuries admittedly inflicted by the defendant. Appellant's brief, p. 9. The defense was, and the defendant testified, that he ran into the room where the infant had been sleeping on a couch after he heard a thump and accidentally stepped on the child: "I heard a noise in the living room, sounded like a thump noise. The first thing that comes into my mind was Derrick had rolled off the couch. So, I ran in there. As I ran in through the hall into the living room, Derrick was laying on the floor at the edge of the couch. I couldn't stop. I tried to step over Derrick and I stepped on top of him."
To prove intent, the State introduced evidence that on July 14, 1983, Derrick was hospitalized for a severely fractured skull and that on July 29, 1983, Mrs. Esther Rosetta Pender discovered that her child's leg was swollen. There were conflicting *Page 1146 
opinions on whether the leg injury was the result of osteomyelitis, an infection of the bone, or whether it had been caused by some trauma to the bone.
The State proved that the defendant began dating Mrs. Pender in December of 1982. In March of 1983, he began seeing her on a "regular basis" and they had become "intimate". There was evidence that the defendant had access to Derrick either immediately prior to the time the injuries were sustained or shortly before the time the injuries were discovered. Although she denied it on the witness stand, Mrs. Pender had told an investigating officer that the defendant became "extremely angry" when she would refuse to have sex. She did admit that the defendant "would get upset about it" and that although he was not jealous of her child, the defendant had remarked that she spent more time with Derrick than she did with him.
"In a prosecution for murder, evidence of recent abuse to the child by the accused is admissible to show `intent, motive or scienter.' . . . Acts of hostility, cruelty and abuse by the accused toward his homicide victim may be proved by the State for the purpose of showing motive and intent. . . . This is `another of the primary exceptions to the general rule excluding evidence of other crimes.'" Phelps v. State, 435 So.2d 158, 163
(Ala.Cr.App. 1983) (citations omitted). See also Baker v. State,441 So.2d 1061, 1062 (Ala.Cr.App. 1983).
Although there must be "some legitimate evidence which would at least furnish a reasonable inference of the involvement of the accused" in the other offense, Moreland v. State, 373 So.2d 1259,1261 (Ala.Cr.App. 1979), "(t)he defendant's involvement or guilt of such other transactions need not be proven beyond a reasonable doubt for such evidence to be admissible." Smith v. State,401 So.2d 185, 186 (Ala.Cr.App.), cert. denied, Ex parte Smith,401 So.2d 187 (Ala. 1981).
 "Before evidence of the commission of other crimes by accused is admitted, the trial court should satisfy itself that the evidence substantially establishes the other crimes, accused's connection therewith, and their connection with the offense for which accused is being tried; and clear and convincing proof, or the making out of at least a prima facie case, has been required.
 "Evidence of a vague and uncertain character, offered for the purpose of showing that accused has been guilty of similar offenses, should not be admitted under any pretense whatever; nor is . . . mere suspicion, or proof of a suspicious circumstance, sufficient." 22A C.J.S. Criminal Law § 690 (1961).
See also 29 Am.Jur.2d Evidence § 333 (1967). Circumstantial as well as direct evidence is admissible to prove the accused's commission of another crime. C. Gamble, McElroy's AlabamaEvidence § 69.02 (5) (3rd ed. 1977).
The State introduced evidence to show that the defendant had the opportunity, the motive, and the means to injure Derrick on the two occasions prior to his death. This evidence was sufficient to connect him to the other offenses. Dolvin v. State,391 So.2d 133 (Ala. 1980); Moore v. State, 415 So.2d 1210
(Ala.Cr.App.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459,74 L.Ed.2d 610 (1982).
 II
The defendant contends that it was error to permit three physicians to testify concerning the battered child syndrome.
Although defense counsel filed a motion in limine objecting to the anticipated admission of Derrick's prior injuries of July 15th and 30th, 1983, there was no pretrial motion concerning the battered child syndrome.
Pediatrician Dr. Cecil Ennis testified without objection that Derrick was a battered child. Pathologist Dr. Gary Cumberland was not questioned on direct examination by the prosecutor about the syndrome. Defense counsel elicited testimony on cross examination that it was Dr. Cumberland's opinion that Derrick "fits into the Battered Child Syndrome." Forensic Pathologist *Page 1147 
Dr. Linda Norton also testified that Derrick "fits into the syndrome that we consider Battered Child Syndrome."
Without objection, this alleged error is not preserved for review. Hammes v. State, 417 So.2d 594, 596 (Ala.Cr.App. 1982);Vinson v. State, 29 Ala. App. 234, 236, 194 So. 705 (1940). Moreover, we find that expert testimony was admissible that Derrick received injuries which were inflicted by another person other than by accidental means and that he fit the battered child syndrome. Bell v. State, 435 So.2d 772, 776-77 (Ala.Cr.App. 1983).
 III
The trial court properly refused to give the defendant's requested charge on criminally negligent homicide because there was no rational basis for a verdict convicting the defendant of that offense. Alabama Code 1975, § 13A-1-9 (b). The circumstances of this case show that the defendant either intentionally, maliciously and willfully stomped the infant to death or that he accidentally stepped on Derrick when he ran into the room to check on him. The defendant was either guilty of murder or innocent because of an accident.
Criminal negligence is of a higher degree than is required for civil liability and requires significantly more than ordinary tort negligence. "The [substantial and unjustifiable] risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." Alabama Code 1975, § 13A-2-2 (4), Commentary.
 IV
The defendant requested the following written instruction:
 "Members of the Jury, I charge you that you may consider the prior contradictory statements of Chris Williams in determining the weight to be given by you to the testimony of that witness."
Although such a charge should ordinarily be given, Roberts v.State, 346 So.2d 473, 477 (Ala.Cr.App.), cert. denied,346 So.2d 478 (Ala. 1977), this charge was properly refused in the case because it is confusing and misleading. The charge can be construed as meaning either that Chris made prior statements which contradict each other or that he had given two prior separate statements which contradicted his trial testimony.
Chris Williams was Derrick Pender's fifteen-year-old brother.
A Department of Pensions and Security protective service worker investigated a suspected case of child abuse in July of 1983 when Derrick sustained a fractured skull. She interviewed Chris once during that investigation. At trial, she testified that he told her that "he thought he heard Derrick scream, but perhaps [he] did not because he had the TV playing very loudly and he was on the telephone." He also told her that his older sister arrived home at approximately 9:45.
At trial, Chris testified that, on the evening of July 14th, he was taking care of his two younger brothers while his mother was at work. Around 7:00 that evening, the defendant came over to fix Mrs. Pender's automobile. He stayed approximately thirty minutes and left. Chris testified that, while the defendant was in the house, he heard Derrick "sort of let out a loud cry or outburst — * * * more or less like, I guess, if he was waking up and, . . . he rolled over or something." Shortly after that, the defendant walked from the back part of the house.
Chris testified that his older sister arrived home "(a) little bit before 11:00, right after I had laid down to go to bed." Chris slept in the same room with Derrick.
When asked if he told Mrs. Gunnison that his sister arrived home at 9:45 that evening, Chris stated, "I'm not sure what I told Mrs. Gunnison." He testified that he did not think he told Mrs. Gunnison that perhaps he had heard Derrick scream because the T.V. was playing very loud and *Page 1148 
he was on the telephone. He stated that, if the T.V. was on, it was not on loud.
The defendant testified at trial that he went to Mrs. Pender's house around 7:30 on the evening of July the 14th to repair her car. He left around 9:00. He admitted going into her room in the back of the house to get the keys to her car just as Chris had testified. He denied going into Derrick's room.
Additionally, we note that the more proper statement of the jury instruction involved here is found in Local 204 of TextileWorkers Union of America v. Richardson, 245 Ala. 37, 42,15 So.2d 578 (1943): "If you are reasonably satisfied from the evidence that [witness's name] has made a contradictory statement about any material fact in this case, then you may consider such contradictory statement in determining what weight you will give the evidence of [witness's name]." Benford v. State,435 So.2d 1327, 1336 (Ala.Cr.App. 1981). The refusal of a written instruction not hypothesized on a belief from the evidence is not error. Barnett v. State, 389 So.2d 535, 536 (Ala.Cr.App.), cert. denied, Ex parte Barnett, 389 So.2d 536 (Ala. 1980).
 V
Prior to trial, defense counsel stated his intention to call numerous witnesses to testify to the defendant's good character for truthfulness, veracity, patience, stability and for his being a good father. Counsel filed a motion in limine to prevent the prosecution from introducing on rebuttal impeaching evidence that the defendant had physically abused his first wife. The motion was denied. No character witnesses testified for the defendant and the prosecution presented no testimony in rebuttal. "`(T)here appears to be general agreement among the cases that a denial of a motion in limine cannot in and of itself constitute reversible error, since the objectionable material has not yet reached the jury's ears, and may never reach the jury at all.'" Oliver v.State, 440 So.2d 1180, 1181 (Ala.Cr.App. 1983). See also Ex parteHouston County, 435 So.2d 1268, 1271 (Ala. 1983).
Other than the facts alleged in the written motion in limine, which were based upon defense counsel's information and belief, there is nothing in the record to show if or how the State intended to impeach the defendant's character witnesses. The State has just as much right to impeach defense witnesses as the defendant has to impeach prosecution witnesses. The denial of the motion in limine was not error.
 VI
Pursuant to Rule 18.2, A.R.Cr.P.Temp., the State requested and was granted the opportunity to photograph the defendant's residence where the murder occurred. The particular arrangement of the interior of this residence was relevant, material and extremely significant to the case of both the prosecution and the defense. The defendant argues, without supporting authority, that Rule 18.2 is unconstitutional because it authorizes a search and seizure without a warrant. We disagree.
Rule 18.2 is a modification of Rule 16 (b) of the Federal Rules of Criminal Procedure. It changes the federal rule by making the State's discovery unconditioned by a prior request by the defendant for discovery and by the inclusion of "buildings or places" within the list of objects which the State may "analyze, inspect, and copy or photograph." The federal rule has been upheld against various constitutional attacks. Wright, FederalPractice and Procedure: Criminal 2d § 256 (1982). On the right of the prosecution to pretrial discovery see Annot. 96 A.L.R.2d 1224 (1964).
Rule 18.2 does not violate the Fourth Amendment to the Constitution of the United States or Article I, Section 5 of the Alabama Constitution. This rule provides for judicial supervision of the contemplated discovery by the State by requiring that discovery shall be granted "[u]pon motion of the state." Although the language of Rule 18.2 (a) is that "[u]pon motion of the State the court shall order the defendant *Page 1149 
to permit the state to . . . inspect," (emphasis added), we consider that language directory only and not mandatory.
Although the rule does not specifically so state, its operation is obviously limited to post-accusation discovery and to those situations where criminal judicial proceedings have been commenced against the accused. This ensures that the State's reasons for seeking disclosure from the defendant are set out in reviewable form. II A.B.A. Standards For Criminal Justice, 11-45 (2nd ed. 1982).
Even though the rule does not require an explicit finding of probable cause before the discovery motion is granted, the provision limiting the discovery to those items "the defendant intends to introduce in evidence at the trial" ensures that the discovery will be relevant and material to the merits of the charge and that it will also be reasonable. See A.B.A. Standards, supra, 11-46 through 11-49.
In its motion, the State alleged that "defense counsel has already photographed said premises and intends to introduce these photographs in evidence at trial." In his motion objecting to the granting of the State's motion for discovery, defense counsel admitted the intended use of photographs of the defendant's residence at trial.
 "Defendant would show that he has taken photographs of the premises in question, as has the Mobile Police Department, and has made such photographs available to the State of Alabama in anticipation of introducing some or all of the same into evidence at trial. Further, of necessity, Defendant will be required, to some extent, should he elect to testify, [to] describe the interior of the residence in which the events giving rise to the instant indictment occurred."
In any homicide prosecution, the scene of the crime is relevant and material. In this case, the scene assumed a special significance on the issue of whether the injury to the child was intentionally or accidentally inflicted. The fact that the defendant had permitted the prosecution to inspect photographs of the scene taken by the defense should not preclude the State from being permitted to inspect and photograph the scene of the homicide.
In conclusion, we note that "it is discretionary with the court whether or not it will allow the jury to view the place where the alleged crime was committed. . . ." 23 C.J.S. Criminal Law § 986 (1961). See Townsell v. State, 255 Ala. 495, 497-98, 52 So.2d 186
(1951). "It is within the sound discretion of the trial judge to allow the jury to inspect a relevant place or object outside the courtroom." McElroy § 208.01.
We find no error in the granting of the State's motion for discovery.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.