## JEFFERSON & N. W. RY. CO. v. BLAIR et al. (No. 2292.)

(Court of Civil Appeals of Texas. Texarkana. July 12, 1920. Rehearing Denied Oct. 7, 1920.)

1. **Railroads** ⚬═282(14) — **Trial** ⚬═194(17), 253(9) — **Instruction not erroneous as on weight of evidence, or as ignoring facts.**

In an action for the death of an oilmill employé, killed by a railroad's car during switching operations on the mill's spur track, instruction *held* not erroneous as inapplicable to the facts, as on the weight of the evidence, as ignoring the fact that the railroad's employés had been instructed by the mill superintendent to proceed with the switching, or as ignoring the effect which the information, given by a brakeman to decedent when the operations were begun, had upon the railroad's liability.

2. **Railroads** ⚬═282(9) — **Contributory negligence of mill employé held question for jury.**

In an action against a railroad for death of an oilmill employé during switching operations on the mill's spur track, it was for the jury to determine whether decedent had been warned of the operations, and whether the warning was sufficient to notify him of the danger, though an employé of the railroad and another testified without contradiction that warning was given.

3. **Death** ⚬═101—**Defendant cannot complain of apportionment between widow and children of decedent.**

As a general rule, if the damages for death are not excessive, defendant has no legal right

---

⚬═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to complain that in the apportionment between a widow and children the widow received more than was justly her share.

**4. Death** ☞99(4)—**$10,000 to widow for death of husband excessive by $5,000.**

Verdict of $10,000 in favor of widow for death of husband, 56 years old, having an expectancy of little more than 16 years, who at the time of his death was receiving only $1.50 a day, though he had been employed at $3 or $4 a day, and would probably have a right to expect other employment at better wages, *held* excessive by $5,000.

Appeal from District Court, Marion County; J. A. Ward, Judge.

Action by Mrs. E. V. Blair and others against the Jefferson & Northwestern Railway Company. From judgment for plaintiffs, defendant appeals. Judgment affirmed conditionally on filing of remittitur, otherwise reversed and cause remanded.

See, also, 214 S. W. 936.

Schluter & Singleton, of Jefferson, and King & Mahaffey, of Texarkana, for appellant.

Jones, Sexton, Casey & Jones, of Marshall, and T. D. Rowell, of Jefferson, for appellees.

HODGES, J. In November, 1917, B. J. Blair, an employé of the Jefferson Oilmill Company was run over and killed by one of the appellant's cars during some switching operations on the spur track used for the benefit of the oilmill. This suit was instituted by Blair's widow and children to recover damages resulting from his death. The appeal is from a judgment in their favor aggregating $12,500.

The undisputed testimony shows substantially the following facts: The Jefferson oilmill was located on the tracks of the appellant railway company, and at the time this accident occurred was engaged in the business common to such enterprises. A spur track ran out from the appellant's main line, which was used only for supplying the oilmill with the usual transportation facilities. On the day that Blair was killed a freight car containing cotton seed had been unloaded on the spur track adjacent to the oilmill. In the process of throwing the seed from the car into the conveyer used by the oilmill some of the seed fell upon the ground on and near the railway track. After being unloaded, the car, with others, was pulled out toward the main line for the purpose of being weighed. The superintendent of the oilmill did the weighing, and directed that some of the empty cars should be returned to the side track for the purpose of being loaded with some of the oilmill products. After the removal of the cars, and before any of them were again switched onto the side track, Blair was directed by the su-

perintendent to shovel the seed lying upon the ground into the conveyer. Later the superintendent joined him, and the two were so engaged when a car was pushed down on the side track. After it was stopped and the brakes set by the brakeman, who "rode the car" for that purpose, the superintendent and Blair resumed their work. Blair was working within 5 or 6 feet of this car, and behind it from the trainmen who were doing the switching. The superintendent was several feet farther down the track. A second car was soon after "shunted" or "kicked" in on the side track by the train crew. It struck the standing car behind which Blair was working with such force as to move it about 10 or 12 feet, causing it to run over and kill Blair. The evidence shows that similar switching operations occurred at that place practically every day during the season when the oilmill was being operated, and the usual manner of doing the switching was not materially different from that adopted by the train crew on this occasion. The evidence further showed that Blair was first employed in the service of the oilmill that morning, and this accident occurred in the afternoon of that day. There was no evidence offered to show that he was familiar with the usual methods of switching cars onto the side track.

The appellees base their cause of action upon the negligence of the train crew in "kicking" or "shunting" the second car on the side track without giving Blair some notice or warning of its approach. They claim that Blair was engaged in the usual manner of doing his work, and had no notice that the second car was approaching, or that it was being "kicked" in with such force as to endanger his life. The brakeman, Locket, who set the brake on the first car and had an opportunity to know that Blair was at work in that vicinity, testified that he gave Blair notice that they were intending to do some switching. He testified as follows:

"I saw a man standing there when I first went in. It was this man that got killed. He was standing on the platform, with a fork in his hand, and looked like he had just got the car empty and was kind of cleaning up. He was standing on the platform of the seed house, with a fork in his hand. I saw he was a strange man, and I had never seen him before, and I went over and told him to watch out, that we were going to be switching a while."

This testimony was corroborated by another witness offered by the appellant; but the superintendent testified that he heard no warning of any kind given.

The court devoted several paragraphs of his main charge to an abstract discussion of the law applicable to the facts of this case, after which he gave the following concrete instructions:

"Now, bearing in mind the foregoing instructions, if you believe from a preponderance of the evidence in this case that the defendant, its servants and employés, switched a box car onto the side track adjacent to the Jefferson oil-mill in Jefferson, Tex., where B. J. Blair was at work, and kicked or drove the said car with force and violence against another car, and thereby drove it onto and over the said B. J. Blair, and killed him; and if you believe from a preponderance of the evidence that in so doing (if it did so) the defendant or its employés were guilty of negligence, as negligence is defined to you in this charge; and if you further so believe that such negligence, if any, of the defendant or its employés was the proximate cause of the death of the said B. J. Blair —then you will find for the plaintiffs, and assess their damages as hereinafter instructed, unless you believe from the evidence that the said B. J. Blair, at the time he was injured, was guilty of contributory negligence, as that term is defined in this charge, that proximately contributed to cause his death."

Among other defenses the appellant pleaded contributory negligence. That defense was in part based upon the assumption that Blair had been warned of the switching operations, and should have been on the lookout. Upon the issue of contributory negligence the court gave the following as a part of his main charge:

"If you believe from the evidence in this case that when the defendant's servants and employés began switching cars onto said side track they or any of them warned said B. J. Blair and gave him notice that they intended, to switch or kick cars onto said side track, and warned him to look out for the same; and if you believe from the evidence that said B. J. Blair failed to use ordinary care to look out for such cars, and failed to heed such notice or warning, if any; and if you further believe that such failure of the said B. J. Blair, if any, was negligence, and that such negligence, if any, proximately caused or contributed to cause his death—then you will find for the defendant."

[1] The objections to the first paragraph quoted above were: (1) That when taken in connection with the previous instructions it was inapplicable to the facts; (2) that it was on the weight of the evidence in telling the jury, in effect, that it was negligence as a matter of law for the employés of the appellant to drive the second car without warning Blair of their purpose to do so; (3) that it ignored the fact that the employés of the appellant had been instructed by the superintendent to proceed with the switching operations in which they were engaged; (4) that it ignored the effect which the information given by the brakeman to Blair when the switching operations were begun had upon the liability of the defendant. The charge is not subject to any of the objections made. We regard it as a fair presentation of the facts of the present case. It assumed no fact which the jury had a right

to determine; neither did it ignore any other fact which the jury had a right to consider.

[2] In presenting the objections to the charge on contributory negligence counsel for appellant argued that if Blair was warned his failure to heed that warning was negligence as a matter of law; that, there being no dispute in the evidence that such warning was given, that issue should not have been submitted to the jury. The court properly submitted to the jury the question as to whether or not Blair had been warned. He was not required to assume as a matter of law that warning had been given, merely because Locket, an employé of the appellant, whose duty it probably was to give the warning, and Johnson, another party, testified that the warning was given. Blair's conduct indicated that he had not been notified of any switching that would put him in danger at the time. Moreover, it was for the jury to say whether the mere notice that some switching would be done in a short time was, under the circumstances, sufficient to notify Blair that the operations would be carried on in that manner, or that the standing car would be struck with such force as to move it and create the conditions which resulted in Blair's death.

We pass over several other assignments presenting different objections to the charge given, and the refusal of the court to give requested special charges. All of these assignments have been carefully considered, and are overruled without discussion, because to notice each in detail would require a useless extension of this opinion. Some of the questions raised were disposed of on the former appeal. Blair v. Railway Co., 214 S. W. 939.

[3, 4] However, we are of the opinion that the appellant's complaint of the excessiveness of the verdict should be sustained. In apportioning the damages the jury awarded to Mrs. Blair $10,000, to two of her children $1,000 each, and to a third $500. The contention here is that the allowance to Mrs. Blair is too large. Counsel for appellees insists that unless the allowance in the aggregate is excessive, the appellant has no legal right to complain that in the apportionment Mrs. Blair received more than was justly her share. As a general rule, that proposition is correct; but in this case we have a finding of the jury that the three children were only entitled to receive in the aggregate of $2,500. There is no complaint on their part that this allowance is inadequate. If that be the limit of what the children were entitled to receive, we are of the opinion that the allowance in its entirety is excessive. The evidence showed without dispute that Blair was about 56 years of age, and that his life expectancy was a little more than 16 years. At the time of his death he was

receiving $1.50 per day. However, it was shown that previous to his then employment he had been working as a laborer in the oil fields, and had received $3 or $4 per day. The evidence further tends to show that his employment in the oilmill was only temporary, and that he would probably have a right to expect other employment at better wages. But, taking all facts into consideration, the amount which his wife might reasonably expect to receive from Blair's wages had he lived the period of his life expectancy, we think the judgment in her favor is excessive. We shall therefore require Mrs. Blair to file in this court within 30 days a remittitur of $5,000 of the allowance made in her favor. If that is done, the judgment will be affirmed; otherwise it will be reversed, and the cause remanded for another trial.

In view of this ruling, there is no occasion to notice that assignment which presents the question of misconduct on the part of the jury.