407 P.2d 120

Pete **SALINAS** and Allan Arthur Transportation, Inc., a corporation, Appellants,

v.

Esther R. **KAHN**, as surviving widow of Manuel S. Kahn, deceased, Allied Van Lines, Inc., a corporation, York Moving and Storage Co., a corporation, Sandra Branam, as personal representative of the Estate of Robert W. Branam, deceased, Sandra Branam, et al., and Nancy Hilligoss, aka Nancy Kahn, individually and as next best friend of Pamela Hilligoss, et al., Appellees.*

2 CA-CIV 43.

Court of Appeals of Arizona.

Oct. 29, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 7788. The matter was referred to

this court pursuant to A.R.S. § 12–120.- 23.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for appellee Esther R. Kahn.

Hirsch, Van Slyke, Richter & Ollason, by Clague A. Van Slyke, Tucson, for appellee Nancy Hilligoss.

Chandler, Tullar, Udall & Richmond, by S. Thomas Chandler, Tucson, for appellees. Allied Van Lines, Inc., York Moving & Storage Co., and Sandra Branam.

MOLLOY, Judge.

This is an appeal arising from a collision of two large trucks on an interstate highway just east of Gila Bend, Arizona. A truck and a trailer hauling sheep, owned by Allan Arthur Transportation, Inc., and driven by Pete Salinas, was proceeding west

on this highway at about 2 p. m., on October 25, 1960, when it had engine trouble. The highway in question is of the new interstate type and is divided by a dirt median; there are two strips of paving, each 38 feet in width, for traffic in opposite directions.

The entire paved width of this 38 feet is level. However, only a 24-foot strip has been finished with a covering of "chat," a material which gives the highway greater wearing quality and is a lighter color than the rest of the paving. This 24-foot strip is divided with a painted line down the center so as to provide two lanes of 12 feet wide each. These two lanes carry substantially all of the vehicular traffic on this highway.

Of the remaining 14 feet of the highway not so covered with chat, 4 feet are on the left-hand or southside of the highway and 10 feet are on the right-hand or northside of the highway. The 4-foot strip on the left-hand side was referred to in the testimony as a "shoulder" and the strip of 10 feet on the right-hand side was referred to in the testimony as an "emergency parking lane." Other than the change in color there was no marking on the highway to separate this shoulder and this "parking lane" from the two "driving" lanes. In the area where the accident occurred, on the right-hand side of the highway, there was a 6-inch "curb" or "ridge" of asphalt. The highway is posted in the area in question, on the right-hand side of the 38-foot strip, with signs bearing the following legend: "Emergency Parking Only."

When Salinas developed engine trouble, he pulled over into the 10-foot "parking lane," stopped his vehicle, and caught a ride into Gila Bend from another Arthur Allan Transportation truck with which he was in convoy. There he called his employer and was instructed to leave his truck and trailer in the parking lane until one of the other trucks could return from unloading its sheep near Welton, Arizona, to take over his load of sheep. The sheep in question were pregnant ewes, which animals require more gentle handling than ordinary livestock. Late in the afternoon, Salinas returned to his truck and at 12:40 the next morning was sound asleep in his cab. At this time, the trailer of the Allan Arthur rig was hit in the rear by a large semi-truck of Allied Van Lines traveling at approximately 60 miles per hour. The impact was to the left of center of the trailer and to the right of center of the Allied Van cab. The Allan Arthur rig was pushed many feet forward, the front and rear of the cab of the Allied Van truck were telescoped together, and the driver and a passenger were killed. The driver of the Allied truck at the time was a Robert Branam and the passenger Manuel Kahn.

Three civil actions were filed as a result of the accident, and were tried together. One action was brought by Salinas and Allan Arthur Transportation, Inc., seeking to recover damages from Allied Van Lines, the Estate of Robert Branam and York Moving and Storage Company, an agent of Allied Van Lines. Another action was filed by Esther Kahn as surviving widow of Manuel Kahn on behalf of herself and two minor children seeking recovery from the Estate of Robert Branam, Allan Arthur Transportation, Inc., Allied Van Lines and York Moving and Storage Company. The third action is one filed by Nancy Hilligoss, also known as Nancy Kahn, for herself and four minor children. This latter complaint alleges that Manuel Kahn had "accepted the obligation for support and maintenance" as to the said Nancy Hilligoss and said minor children.

At the trial, the court ruled that the undisputed facts established the negligence of Robert Branam and Allied Van Lines. The court further directed a verdict in favor of the defendant York Moving and Storage Company. There is no appeal from these rulings. The case went to the jury on the question of whether Salinas and Allan Arthur Transportation had been negligent and whether such negligence, if any, contributed to the accident. The jury's verdicts were adverse to Salinas and Allan Arthur Transportation and these two par-

ties have appealed to this court from the judgments rendered on such verdicts.

There are numerous assignments of error. The first assignment is that the court erred in denying the motion of Allan Arthur Transportation and Salinas to dismiss the complaint of Nancy Hilligoss on the grounds that she had no capacity to maintain an action for the wrongful death of Manuel Kahn. This motion was not made until after the opening statements of counsel to the jury. From opening statements, it was apparent that Nancy Hilligoss was neither a widow nor a personal representative of the deceased Kahn, but rather was a woman with whom he was living and by whom he had fathered a child.

The wrongful death act under which this complaint was brought provides in part:

"An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate." A.R.S. § 12–612.

Though the motion to dismiss the Hilligoss complaint was resisted by her counsel at the beginning of the trial, when the case was finally submitted to the jury, plaintiff Hilligoss abandoned her position and made no objection to instructions which informed the jury that recovery should be allowed only for the widow and the natural children of the deceased. The instructions would not permit any recovery for Mrs. Hilligoss or her children by another father. The verdict rendered was in favor of "* * * plaintiff, Esther R. Kahn, as surviving widow of Manuel S. Kahn, deceased, and for and on behalf of Terry, Richard and Tamara Kahn * * * in the sum of $65,000.00."

Rule 9(a) Rules of Civil Procedure, 16 A.R.S. provides:

"It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court. *When a party desires to raise an issue as to* the legal existence of any party or *the capacity of any party to sue* or be sued or the authority of a party to sue or be sued in a representative capacity, *he shall do so by specific negative averment*, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." (Emphasis added)

There was no averment in Allan Arthur Transportation's answer or in any other pleading raising an issue as to the capacity of the plaintiff Hilligoss to sue. With full discovery being allowed to parties under modern rules of procedure, matters of this kind should be raised prior to trial, particularly when a jury trial is scheduled, as was done in Baxter v. Harrison, 83 Ariz. 354, 321 P.2d 1019 (1958). In the Baxter case, the lack of plaintiff's capacity to sue was raised by a motion for summary judgment, even though the defense had not been raised in the answer. Both the trial and the appellant court treated the motion for summary judgment as being a satisfactory compliance with Rule 9(a), supra.

■ However, in the instant case, we have this defense handed to the trial judge in the midst of a jury trial. While the trial court in its discretion might have regarded the motion to dismiss as a motion to amend, it was not required to do so, and in view of the lateness of the hour was fully justified in treating the motion as it did. No substantial prejudice resulted to the appellants in any event. The inconvenience of having one additional counsel appearing in opposition during the trial is a small price to pay for the failure to bring this matter to the trial court's attention at an earlier time.

The second assignment of error pertains to the refusal of the trial court to direct a verdict in favor of the defendant Allan

Arthur Transportation. The contention here is that there was no evidence from which the jury could rightfully find that Allan Arthur Transportation was negligent or that any negligence on its part was the proximate cause of the accident.

This assignment is inextricably related with other assignments of error pertaining to instructions either given or refused by the court pertaining to specific sections of our highway code.

One of the instructions given (Kahn's No. 19), over appellants' objection that there was no evidence to support such an instruction, was one which contained the following language from A.R.S. § 28–871:

"Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave the vehicle off that part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of the stopped vehicles shall be available from a distance of two hundred feet in each direction upon the highway.

"This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position."

It is the appellants' contention that the area in which the Allan Arthur Transportation truck was parked was not a " * * * paved or main-traveled part of the highway * * *," and therefore this statutory provision has no application to this case. It is the appellants' contention that the word "paved" must be read in connection with "main-traveled" and the other language in the section, and when so read that it is clear the legislature intended this statute to apply only to those areas of the highway intended for normal travel and not to areas intended for parking only. The appellants contend that the words "Emergency Parking Only" apply particularly to the 10 feet on the right side of the highway, setting this area aside exclusively for parking.

It is the appellees' contention, on the other hand, that the statute means just what it says, and that the word "paved," being used in disjunction with the word "main-traveled," stands alone as far as this case is concerned and, inasmuch as the area where Salinas parked his truck was "paved," the statute is pertinent to the facts of the case.

In rebuttal, the appellants point out that we have a statutory definition of a highway in A.R.S. § 28–149 as follows:

" 'Street' or 'highway' means the entire width between the boundary lines of every way when any part thereof is open to the use of the public for purposes of vehicular travel."

If all "paved" portions of the highway are covered by A.R.S. § 28–871, they argue that the parking upon any rest areas on the highway which are paved would constitute a violation of this section and that this obviously was not intended by the legislature.

The origin of the disputed section (A.R.S. § 28–871) is § 50 of the Uniform Act Regulating Traffic on Highways, promulgated by the National Conference of Commissioners on Uniform State Laws. 11 Uniform Laws Annotated, p. 48. This Act was declared obsolete by the National Conference of Commissioners on Uniform State Laws in 1943. That it is lacking in clarity is demonstrated by the problem before this court.

■ When the language of a statute literally interpreted results in a meaning that is so unreasonable the legislature could not have intended it, the court is justified in giving to the language a reasonable meaning doing the least violence possible to the language. Mayor & Common Council

of City of Prescott v. Randall, 67 Ariz. 369, 196 P.2d 477 (1948); Feffer v. Bowman, 90 Ariz. 48, 365 P.2d 472 (1961).

Despite the statutory definition contained in A.R.S. § 28–149, we do not believe the legislature intended the word "highway" in A.R.S. § 28–871 to apply to those areas of the right-of-way which are set aside for parking or are paved for purposes not intended for vehicular travel. We hold it was the legislative intent in this particular statute that the word "highway" apply only to those areas which a reasonable person using the highway, having cognizance of all pertinent road signs and markings, would consider to be intended for vehicular travel, including the berm or shoulder of the highway if the same is improved for vehicular traffic.

The court includes the improved shoulder of the highway within the intent of this statute for the reason that in this particular section the legislature did *not* use the word "roadway" which would have been most convenient to use if the intent were to exclude the berm or shoulder. The statutory definition of "roadway," contained in the very same chapter of our Code as the section under interpretation, is:

> " 'Roadway' means that portion of a highway improved, designed or ordinarily used for vehicular travel, *exclusive of the berm or shoulder.*" (Emphasis added) A.R.S. § 28–602, subsec. 16, in part.

If the word "highway" is given a meaning relating it to vehicular travel as above indicated, all parts of the statute have reasonable meaning. A paved shoulder or an unpaved shoulder, if "main-traveled" (which seems unlikely ever to be the case), are then within the prohibitions of the quoted statute. Improved shoulders on our modern, fast-traveled highways serve the obvious purpose of providing a margin for human and mechanical error, which function might be frustrated if cars were habitually parked thereon. It seems reasonable that the legislature intended by the subject statute, A.R.S. § 28–871, to regulate parking in these areas, as well as upon the roadway itself.

The interpretation given leaves room for the highway department, in the exercise of its powers of supervision over the State Highway system, to set aside areas of the right-of-way exclusively for parking, and when this is done in such a manner that it is reasonably apparent to the ordinary user of the highway that such improved areas are not intended as the roadway or as a shoulder thereto, there would be no violation of the subject statute by parking on such improved areas. The driver upon the highway has the right to rely upon outward manifestations such as road signs (Mitchell v. Emblade, 80 Ariz. 398, 298 P. 2d 1034 (1956) ), and would not be bound by the unexpressed intentions of engineers who designed the highway.

Under the evidence established in this trial, this court holds that reasonable men might differ on whether these particular 10 feet had been set aside for emergency parking only. Hence there was propriety in informing the jury of A.R.S. § 28–871, for if the area had not been set aside exclusively for parking, then there was sufficient evidence to go to the jury on the question of whether it would have been practicable for the Allan Arthur Transportation rig to have parked further to the right and more off the highway than was the case and also on the question of whether this truck was "disabled" on the highway in such manner that it was impossible to avoid stopping and temporarily leaving the vehicle on the highway.

On retrial, as this court has determined will be necessary because of other errors in this record, if the evidence remains substantially the same as to the manner of marking and signing this stretch of highway, the instructions pertaining to this particular section of our Code should be framed in such a manner as to leave the question of whether the 10-foot strip was a part of the "highway," or was reserved

for parking, as a factual question to be decided by the jury.

◼ The foregoing disposes of the assignment of error pertaining to the court's instruction on "disabled" vehicles. The only objection advanced as to this instruction was that there was no evidence of any violation of A.R.S. § 28-871, and hence we consider no other objection on appeal. 51 (a) Rules of Civil Procedure.

◼ The appellants further complain that even if there was evidence of negligence on the part of appellants, such could not have been the proximate cause of this accident. Reliance is placed upon the decision of Motors Ins. Corp. v. Rhoton, 72 Ariz. 416, 236 P.2d 739 (1951). This court believes the Rhoton decision should be limited to a factual situation as to which reasonable men could not differ but what the accident would have occurred in any event, regardless of the violation of the statute under consideration. The evidence in this case does not present such a clear-cut situation, and this court holds that the question of causation is properly one for the jury.

The appellants also complain that the trial court refused to give any of three instructions requested by them on the subject of "legal cause" as opposed to "remote cause." Two of the instructions so requested are part of the record on appeal; the third has been lost from the record in some unexplained way. The court has examined the two instructions in the record and finds them to be very abstract instructions on the subject of intervening causation. The first is erroneous because it ignores the law that there may be more than one proximate cause of an accident. The second is so abstruse it is felt that the jury would have gleaned little from it, if it had been given. It speaks of "a passive condition," "intervening conduct," and "third person" without defining any of these terms or relating them to the particular facts of this case The "third person" concept is difficult to apply to the facts of this case because all participants in the accident were before the court as parties.

The appellants suggest that the trial court, on the basis of the requests made, regardless of whether they were technically correct or not, should have covered in its instructions this concept of remote causation. The problem of an intervening or "superseding" cause, as it is referred to in the Restatement (Second), Torts § 440 (1965), is certainly of some import to the legal and factual problems presented in this litigation and the matter having been called so clearly to the trial court's attention ordinarily it would be expected that the court would on its own give an appropriate instruction. Vegodsky v. City of Tucson, 1 Ariz.App. 102, 399 P.2d 723 (1965).

However, the appellants' inability in at least two tries to frame a suitable instruction on this subject points up the difficulty of the trial judge rising to the occasion. If the problem of intervening cause is one of proximate causation,[1] then we are in a corner of the legal closet distinguished for its darkness. Dean William L. Prosser has said:

"Proximate cause remains a tangle and a jungle, a palace of mirrors and a maze, and the very bewildering abundance of the literature defeats its own purpose and adds its smoke to the fog." Proximate Cause in California, 38 Calif.L.Rev. 369 (1950)

◼◼ Most authority, and certainly that in Arizona (Salt River Valley W. U. Assn. v. Cornum, supra Note 1), is to the effect that whether subsequent negligent conduct is a superseding cause of an injury so as to relieve the first negligent actor of liability

---

1. It is so treated in Salt River Valley Water Users Assn. v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937), and subsequent Arizona cases in this area. Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417 (1941), and MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958). Dean Prosser believes it more readily understood as one of public policy limiting liability rather than one of causation. Proximate Cause in California, 38 Calif.L.Rev. 369 (1950).

depends upon whether the first actor " * * should reasonably have anticipated * * * " that the subsequent negligent conduct "might" occur and together with the preceding negligent conduct cause the injury (quotes from Salt River Valley W. U. Assn. v. Cornum, supra). Foreseeability appears to be the gist of the test adopted by our Supreme Court and, this being so, this court holds that the essence of this rule was sufficiently covered in other instructions given by the trial court, among them being the instruction on proximate cause itself, as to which the appellants have made no complaint, and the following instructions:

"You are instructed *that Allan Arthur and Pete Salinas were required by law to anticipate and foresee and guard against only what is likely to happen, but that they are not required to foresee and guard against that which is not likely to happen, or in other words that which is only remotely or slightly probable. And that the proper test in cases of this kind is not whether the injurious results or consequences were possible, but whether it was likely to occur according to the usual experience of persons.*"

"I instruct you that the duty to exercise care arises from probabilities rather than from bare possibilities of danger. Consequently, *in order for it to be established that Allan Arthur or Pete Salinas were negligent it must first be proved by a preponderance of the evidence that the alleged negligent conduct of these defendants was such that acting as reasonable and prudent men they should have recognized that their acts created an appreciable chance of causing the harm done rather than the bare possibility thereof. And unless such is proved by a preponderance of the evidence you should return your verdict in favor of Pete Salinas and Allan Arthur Transportation.*" (Emphasis added)

This court realizes that the above quoted instructions are couched in terms of whether there was negligence rather than in terms of proximate causation. However, the essence of the necessity of foreseeability is clearly and categorically stated, even to the point, perhaps, of overstating the case insofar as the necessity of foreseeing the particular harm which resulted.[2] That this element of foreseeability was categorized in the instructions given under the subject of negligence does not, in this court's opinion, detract from the impact of this instruction upon the jury. Jurors are not computers and hence a wrong label will not completely frustrate their calculations. In passing, it is interesting to note that the linking of the requirement of foreseeability with the concept of negligence as was done in the quoted instruction is in accord with the treatment of this subject in the 1948 Supplement to Restatement of Torts.[3]

2. Cf. Restatement (Second), Torts § 435 (1) (1965):
"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

3. "The problem which is involved determining whether a particular intervening force is or is not a superseding cause is in reality a problem of determining whether the risk that that force would intervene, (i. e., that the other would be exposed to that hazard) was, at least, one of the reasons for imposing the duty upon the actor to refrain from the negligent conduct. If the duty is designed in part, at least, to protect the other from the risk of being harmed by the intervening force, or by the effect of the intervening force operating on the condition created by the negligent conduct, then that hazard is within the protection of the duty and the intervening force is not a superseding cause. See §§ 443–452. A completely accurate analysis of the hazard element in negligence would require the material on superseding cause in Chapter 16 to be placed in this chapter. However, in the past courts have generally discussed the effect of intervening forces in terms of causation. The proper solution of the problem of deter-

■ In the absence of a particular request properly stating the law, this court sees no reversible error in the failure of the trial court to instruct further upon this troublesome concept of intervening causation. We do not go so far as to hold, as did our counterpart in Phoenix, that an instruction on intervening cause was unnecessary under similar though not completely analogous circumstances. City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301 (1965).

The appellants complain that the jury was instructed in the language of A.R.S. § 28-936 that a vehicle parked or stopped upon a roadway or shoulder adjacent thereto at night, when there is not sufficient light to reveal any person or object within a distance of 500 feet upon the highway, is required to have one or more lamps which shall exhibit a white or amber light on the roadway side visible from a distance of 500 feet to the front of the vehicle and a red light visible from a distance of 500 feet to the rear.

■ This court has examined the record before the trial court and has come to the conclusion that there is no evidence in the record to support the giving of an instruction on this statute. All of the witnesses who testified at the trial indicated there were several red lights burning to the rear of the sheep trailer at the time of the accident. There was no evidence the lights were not of sufficient brightness. One of these witnesses was a trucker who was following the Allied truck. He testified he saw the lights of the Allied truck merge into the red taillights of the sheep trailer as the accident took place. This trucker was impeached, in part, by a written statement given to an insurance adjuster soon after the accident took place. An extrajudicial contradictory statement, though it may impair the value of the testimony given, is not itself evidence of the fact to be established. Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756 (1955); Udall, Arizona Law of Evidence § 63, p. 92 (1960).

■ The appellees argue the fact that the accident occurred at all is some evidence that the rear lights were not burning immediately prior to the accident. This was a straight road with unimpeded view ahead. *There were no brakes applied prior to the collision.* It seems to be much more reasonable to assume that the Allied driver had fallen asleep or was otherwise incapacitated prior to the accident than that there were no lights burning on the rear of the sheep truck.

■ Our Supreme Court has uniformly held that reversible error has been committed when an instruction is given which would permit recovery under a theory of law as to which there is no substantial evidence. Eldredge v. Miller, 78 Ariz. 140, 277 P.2d 239 (1954).

The appellants complain of an instruction informing the jury that if the defendant was liable for a violation of a statute "* * * where the accident caused is of the kind the Statute was intended to prevent," then the accident which occurred "* * * must be considered to be proximately caused by nonobservance of the law."

■ This court agrees this instruction goes too far in permitting the jury to interpret the law, which is primarily the function of the court. 82 C.J.S. Statutes § 312, pp. 530, 531; 50 Am.Jur. 198, Statutes § 219. Though the law stated in the subject instruction may be good law for the court (Restatement, Torts § 449), it is not proper jury instruction. The ascertainment of the intent of the legislature should not be left to the speculation of the jury. Our Supreme Court has said:

"We have repeatedly held that the carnal rule of statutory construction is

mining whether the presence of an intervening force should relieve the actor from liability for harm which his conduct was a substantial factor in bringing about (see § 440) is facilitated by an appreciation of the fact that the problem is a 'hazard problem' rather than a problem of causation." Restatement, Torts (Supp. 1948), § 281, Comment ee at p. 651.

that we must, if possible, ascertain the intent of the legislature. There are many things which we are permitted and, indeed, required to take into consideration in ascertaining this, such as the language used, its grammatical construction, other statutes *in pari materia,* the general policy of the state, and many other well known rules of construction." Estate of Stark, 52 Ariz 416, 422, 82 P.2d 894, 896 (1938).

The jury has neither the training nor the information from which an intelligent appraisal of the legislative intent can be ascertained. We hold that the giving of the subject instruction was error.

▇▇▇▇ Appellants allege it was error to instruct the jury upon A.R.S. § 28–961, which requires reflectors to be placed in certain positions after an accident. This court holds there was sufficient evidence to go to the jury on the question of whether reflectors had been properly placed. While Salinas and truckers and others arriving on the scene after the accident testified that suitable reflectors were found after the accident, it is possible under the evidence that Salinas could have placed these reflectors after the collision. There was circumstantial evidence to support such a theory. The reflectors were of such a height they would have been damaged if the Allied truck had passed over them. The reflectors found after the accident were so positioned that it would have been extremely difficult for the Allied truck to have passed by them without going over them. This was particularly true of the reflector that was supposedly placed 30 to 35 feet to the rear of the sheep trailer prior to the accident and which was found intact to the rear of the Allied Van truck after the accident.

The appellants complain the jury was instructed that the word "Emergency" indicated a transitory condition, and " * * * when, under all the facts, a reasonable time has elapsed to overcome the 'emergency' compelling or permitting the stopping on a highway, the 'emergency' will be considered in law as having ceased and the right to park on a highway is then terminated."

▇▇▇▇ It is the law that the driver of any motor vehicle shall obey the instructions of any official traffic control device placed in accordance with the law. A.R.S. § 28–644. This highway was marked for "Emergency Parking Only." It seems clear from this sign that regardless of *where* parking was permissible in pursuance of this sign, such parking was reserved to *emergency* parking. This court holds there was sufficient evidence to go to the jury on whether the sheep truck and trailer were violating this requirement when there was no effort made to remove this rig from this highway from the time it was parked at about 2 p.m. until the time of the accident in the early morning hours of the next day. This court holds the quoted instruction was proper.

▇▇▇▇ The appellants complain of the failure to grant instructions telling the jury that driving in the right 10 feet of this highway was a violation of law. It was not error to refuse such instructions in the categorical manner in which they were framed.

On retrial, if the evidence is still such that reasonable men could differ as to what the ordinary driver would glean from pertinent signs and markings as to whether the right-hand 10 feet was reserved for parking only, appropriate instruction should be given leaving this as a factual issue to be resolved by the jury.

The appellants attack the constitutionality of our death by wrongful act statute, A.R.S. § 12–611 et seq., as amended in 1956, on the grounds it violates the equal protection clauses of the Federal (Amendment XIV) and State (Art. 2, § 13, A.R.S.) Constitutions.

Appellants contend that the damages recovered are measured by that required to compensate the "surviving parties" for the " * * * injury resulting from the death" (A.R.S. § 12–613), and that these same damages are distributed " * * * in the proportions provided by law for distribution

of personal estate left by persons dying intestate" (§ 12–612). It is argued there is an unreasonable and arbitrary distinction made by this law between (1) persons injured by the death of another who happen to have relatives who were not appreciably injured by the death (as for instance a minor dependent child with sisters and brothers who had reached their majority and who were self-supporting), and (2) persons injured by a death who do not happen to have such relatives (as for instance a minor dependent child who does not have brothers and sisters).

The appellees, though conceding that the statute is arbitrary in its provisions, contend these do not render the statute unconstitutional and, even if they did, that the appellants are in no position to raise this question.

The method of the distribution of damages incurred by survivors from a wrongful death according to the laws of intestacy is by no means a stranger to the statutes of many states. The injustice of this particular distribution has been commented upon by many courts, among them being Snedeker v. Snedeker, 164 N.Y. 58, 58 N.E. 4 (1900); Murphy v. Duluth-Superior Bus Co., 200 Minn. 345, 274 N.W. 515, 112 A.L.R. 27 (1937).

Cases dealing with similar statutory anomalies may be found in an annotation at 14 A.L.R. 516, at p. 520, supp'd 112 A.L.R. 30 at p. 32, and supp'd 171 A.L.R. 204 at p. 206. None of these cases, however, appears to deal with an attack upon such a statute under the equal protection clause of a state or the Federal Constitution.

There are statements in case law to the effect it is no concern of the defendant in a wrongful death action how the proceeds thereof are distributed. Richmond v. Chicago & W. M. Ry. Co., 87 Mich. 374, 49 N.W. 621, 626 (Mich.1891); Jefferson & N. W. Ry. Co. v. Blair, 224 S.W. 546 (Tex. 1920); Rickards v. Noonan, 40 Cal.App.2d 266, 104 P.2d 839 (1940).

Unquestionably, the law is that a person who is not injured by an uncon-

stitutional provision of a statute may not raise an objection as to its constitutionality. McKinley v. Reilly, 96 Ariz. 176, 393 P.2d 268 (1964). However, it would seem to this court that a defendant who is to be required to pay out money damages under a particular statute that is void in its entirety by reason of unconstitutionality is injured by such a statute. We believe the following to be a proper statement of this law:

"Unless a person's rights are directly involved, such questions [unconstitutionality] must necessarily be postponed, until they are met with upon the highway of adjudication, *unless the unconstitutional feature, if it exists, is of such a character as to render the entire act void.*" (Emphasis added) Gherna v. State, 16 Ariz. 344, 358, 146 P. 494, 500 (1915). (Also see 16 C.J.S. Constitutional Law § 88, p. 260.)

If the entire amendment of 1956 were to be held unconstitutional, the law would be restored to the wrongful death statute which existed theretofore. 82 C.J.S. Statutes § 270, p. 447. Under this previous Act, this court is of the opinion that the measure of damages for which the defendants would be liable in a wrongful death action would usually be substantially less than under the measure adopted by the 1956 Act. Therefore, we are unable to accept completely the appellees' contention that the appellants are not in a position to raise the constitutionality of the 1956 amendment.

It is well established law that every presumption lies in favor of the constitutionality of legislation and that if legislation can be given a constitutional interpretation, without doing violence to its provisions, that the Act should be so interpreted. Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963). In the case of our wrongful death act, the provision providing for the distribution according to the laws of intestacy is one that is carried over from the old Act (A.R.S. § 12–612, subsec. C). The amendment adopted in 1956 changed the provision pertaining to those who may

bring the action (A.R.S. § 12–612, subsec. A); and, the provision pertaining to the measure of damages, so as to clearly specify there should be compensation for the *injury* to the surviving parties, rather than to the estate, as had been the case under prior law. Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881 (1921). It seems to this court it may very well be argued that there is an obvious inconsistency between the new provisions for the assessment of damages and the old provisions for the distribution of damages and that the 1956 Act implicitly amended the old provisions for distribution in the case when designated beneficiaries survive. Authority for such an interpretation may be found in Mayor & Common Council of City of Prescott v. Randall, 67 Ariz. 369, 196 P.2d 477 (1948).

As was said at 14 A.L.R., p. 522:

"If, as it is conceded, this construction of the statute [that the damages to the survivors shall be distributed according to the laws of intestacy] will cause inequalities and injustice in the distribution of the proceeds of the verdict, it would seem that such a result should not be reached by judicial interpretation unless the language of the statute is so plain, clear, and mandatory as to permit of no other construction. This can hardly be claimed as to the statutes in question, for the express purpose is to compensate merely for the pecuniary loss to certain relatives or dependents of the deceased, and it is certainly clear that no intention is expressed that any of the relatives shall profit by the death complained of. If the purpose of the statute that the damages shall be assessed in view of the pecuniary loss to the individuals is taken into consideration, it would seem that the reference to the statutes of distribution as the mode of determining the apportionment of the verdict should be construed as being merely for the purpose of ascertaining the classes of persons who may be entitled to participate, and the manner of distribution when not influenced by any consideration of pecuniary loss to particular beneficiaries, and not as intending absolutely to control with regard to the amount each of the distributees shall receive when considered in connection with the pecuniary loss suffered by them."

Rather than hold the 1956 amendment to be void in its entirety, this court would follow the above line of reasoning and would hold that the provision regarding distribution is controlling only when the action is brought for the benefit of the estate, that is, when there is no surviving spouse, parent or child. This is as far as this court need go and should go in order to ascertain that the appellants' rights are not prejudiced by the application of the measure of damages set forth in the 1956 Act. Whether it is so necessary to so construe the Act must await the time when the problem is " * * * met with upon the highway of adjudication, * * *," that is, when there is a contest between those claiming for themselves different apportionments of a recovery under the Act.

The appellants challenge the instructions given by the trial court on the subject of damages (Kahn's instruction No. 9) on the grounds such instructions permitted recovery both for loss of financial support to the widow and minor children and also for the loss of possible inheritance which might have been transmitted from the deceased to his widow and minor children if he had lived a normal span of life.

The appellants take the position that there is an irreconcilable conflict between these two measures of damages and that the allowance of the possibility of inheritance was repealed when the new Act was adopted in 1956.

This court finds no such irreconcilable conflict. If the evidence establishes a probability there would have been property accumulated by the deceased which would have been inherited by those pro-

tected by this statute, this court believes the overwhelming weight of authority in this country to be that the loss of such probability of inheritance is an injury for which compensation may be granted under acts similar to that adopted by the 1956 amendment. Martin v. Atlantic Coast Line R. Co., 268 F.2d 397, 91 A.L.R.2d 472 (5th Cir. 1959); Annotation at 91 A.L.R.2d 477, p. 478. When such damages are denied under wrongful death acts similar to our own, it is usually because under the particular facts of the case the allowance of such damages would be too speculative. See Note 10, 91 A.L.R.2d at p. 485, and the editorial comment at 91 A.L.R.2d, p. 487.

■ The question of whether there was sufficient evidence in this case to take this element of damage to the jury was neither raised in the lower court nor on appeal and will therefore not be considered in this opinion.

■ The appellants also challenge the subject instructions on damages on the basis they authorize the jury to consider: "* * any loss of affection, companionship, care, protection, guidance and discipline * * *" which the beneficiaries may have suffered by reason of the death of the deceased. It is argued that the statute in question is limited to "pecuniary loss" and that these elements should therefore not be considered. This court adopts what it considers to be the better rule upon this matter, and holds the intangible losses under discussion may be considered by the trier of facts in assessing pecuniary damages. Merritt Chapman & Scott Corp. v. Frazier, 289 F.2d 849 (9th Cir. 1961); Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118 (Mich.1960); Wil-

liams v. McDowell, 32 Cal.App.2d 49, 89 P.2d 155 (1939).

■ The appellants also complain of the giving of Kahn's instructions 11 and 19. The reasons given on appeal as to why these instructions are supposedly erroneous are not the same as those presented to the trial court and hence will not be considered on appeal. Rule 51(a) Rules of Civil Procedure.

Two additional assignments of error pertain to a comment made by the court during the course of the trial and argument made by one of plaintiff Kahn's counsel during argument. In view of the fact that this case must be retried, and it is not anticipated these matters will arise again, this court foregoes commenting upon same.

In summary, two pellets from the shotgun blast leveled by the appellants in this appeal have found a vulnerable target. These are in connection with the instruction based on A.R.S. § 28–936 (requirement of a taillight) and in connection with the instruction making the issue of proximate cause depend upon the jury's ascertainment of legislative intent. Because of these errors, the judgment of the trial court is reversed and the case remanded for a new trial.

HATHAWAY, J., and RICHARD N. ROYLSTON, Superior Court Judge, concur.

NOTE: Judge Herbert F. Krucker having requested that he be relieved from consideration of this matter, Judge Richard N. Roylston was called to sit in his stead and participate in the determination of this decision.